No. 22-15870

# In the United States Court of Appeals
## for the Ninth Circuit

MICHAEL ZELENY,
*Plaintiff-Appellant,*

v.

ROB BONTA, California Attorney General, in his official capacity,
*Defendant-Appellee,*

and

CITY OF MENLO PARK, a municipal corporation; DAVE BERTINI, an individual,
in his official capacity; NEW ENTERPRISE ASSOCIATES, INC.,
a Delaware corporation,
*Defendants.*

**Appeal from a Judgment of United States District Court of the
Northern District of California Case No. 3:17-cv-07357-RS
Honorable District Court Judge Richard G. Seeborg**

**Appellant's Opening Brief**

Alan Alexander Beck
alan.alexander.beck@gmail.com
2692 Harcourt Drive
San Diego, CA 92123
Phone: (619) 905-9105

*Attorney for Appellant*

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................... iii

INTRODUCTION ............................................................................... 1

JURISDICTIONAL STATEMENT ...................................................... 3

STATEMENT OF THE ISSUES FOR REVIEW ................................... 3

STATEMENT OF THE CASE ............................................................ 3

I.     California Law Generally Prohibits the Unloaded Open Carry of Firearms ................................................................................... 3

II.    Procedural History ...................................................................... 5

    A.    Plaintiffs' Constitutional Challenge to California's Open Carry Ban.................................................................................. 5

    B.    The District Court's Grant of Defendant's Motion for Summary Judgment and Entry of Judgment........................................... 5

        1.    Summary of the District Court's Order ...................... 6

SUMMARY OF THE ARGUMENT ..................................................... 7

ARGUMENT .................................................................................... 12

I.    Standard of Review...................................................................... 12

II.    California's Open Carry Ban Violates the Second Amendment .................. 13

    A.    Plaintiff's Conduct is Covered by the Second Amendment's Plain Text ............................................................................... 14

    B.    California Must Identity a Historical Analogue to Its Open Carry Ban.................................................................................. 18

    C.    There is no Historical Tradition of Prohibiting Open Carry .............. 21

D.    Cal. Pen. Code § 26400 Violates the Second Amendment Even if Cal. Pen. Code § 26350 is Found Constitutional ............................ 26

E.    Long Guns Are Arms Protected by the Second Amendment ........... 32

F.    California's Ban on Long Arm Carry Violates the Second Amendment ........................................................................................ 38

G.    The Entertainment Exemption Violates Equal Protection ................ 39

    1.    Mr. Zeleny's Equal Protection Claim Implicates both First Amendment and Second Amendment Conduct ...................... 41

III.    CONCLUSION ................................................................................. 52

STATEMENT OF RELATED CASES ................................................... 53

CERTIFICATE OF COMPLIANCE ...................................................... 54

CERTIFICATE OF SERVICE ............................................................... 55

# TABLE OF AUTHORITIES

## CASES

*Albino v. Baca*,
   747 F.3d 1162 (9th Cir. 2014) ............................................................................13

*Andrews v. State*,
   50 Tenn. 165 (1871)...........................................................................................9

*Arizona Dream Act Coalition v. Brewer*,
   757 F.3d 1053 (9th Cir. 2014) ............................................................................40

*Ashaheed v. Currington*,
   7 F.4th 1236 (10th Cir. 2021) ............................................................................51

*Aymette v. State*,
   21 Tenn. (2 Hum.) 154 (1840)...........................................................................24

*Baird v. Bonta*,
   2023 U.S. App. LEXIS 23760 (9th Cir. Sep. 7, 2023).......................................27

*Baird v. Bonta*,
   81 F.4th 1036 (9th Cir. 2023) ...........................................................8, 18, 20, 21

*Branzburg v. Hayes*,
   408 U.S. 665 (1972)...........................................................................11, 42, 46

*Broussard v. Univ. of Cal. at Berkeley*,
   192 F.3d 1252 (9th Cir. 1999) ............................................................................13

*Brown v. Entm't Merchs. Ass'n*,
   564 U.S. 786 (2011)...........................................................................................28

*Caetano v. Massachusetts*,
   577 U.S. 411 (2016)........................................................................................27, 37

*Celotex Corp. v. Catrett*,
   477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)...................................13

*Christopher Lake Dev. Co. v. St. Louis County*,
   35 F.3d 1269 (8th Cir. 1994) ................................................................50

*City of Cleburne v. Cleburne Living Ctr.*,
   473 U.S. 432 (1985)...................................................................48, 49

*Clark v. Community for Creative Non-Violence*,
   468 U.S. 288 (1984)..........................................................................42

*Del Monte Dunes at Monterey, Ltd. v. City of Monterey*,
   920 F.2d 1496 (9th Cir. 1990) ...............................................................50

*District of Columbia v. Heller*,
   554 U.S. 570 (2008)...................................... 8, 9, 14, 16, 18, 20, 23, 24,
                                    27, 29, 30, 31, 32, 33, 37, 38

*In re Eric J.*,
   25 Cal. 3d 522 (1979) ........................................................................49

*Espinoza v. Montana Department of Revenue*,
   140 S. Ct. 2246 (2020) .......................................................................19

*Fowler Packing Co., Inc. v. Lanier*,
   844 F.3d 809 (9th Cir. 2016) ...............................................................50

*Gitlow v. People of State of New York*,
   268 U.S. 652 (1925)..........................................................................45

*Heller v. District of Columbia*,
   670 F.3d 1244 (2011)..........................................................................33

*Kachalsky v. Cnty. of Westchester*,
   701 F.3d 81 (2d Cir. 2012) ...................................................................22

*Kennedy v. Louisiana*,
   554 U.S. 407 (2008)..........................................................................19

*Knox v. Brnovich*,
   907 F.3d 1167 (9th Cir. 2018) .......................................................42, 43

*Lawrence v. Texas*,
 539 U.S. 558 (2003) .......................................................................48

*Local 144 Nursing Home Pension Fund v. Demisay*,
 508 U.S. 581 (1993) .......................................................................31

*Mass. Bd. of Retirement v. Murgia*,
 427 U.S. 307 (1976) ..................................................10, 11, 45, 46

*McDonald v. Chicago*,
 561 U.S. 742, 130 S. Ct. 3020, 177 L.Ed.2d 894 (2010) ..................33

*Merrifield v. Lockyer*,
 547 F.3d 978 (9th Cir. 2008). .....................................................49, 50

*Metro. Life Ins. Co. v. Ward*,
 470 U.S. 869 (1985) .......................................................................50

*N.Y. State Rifle & Pistol Ass'n v. Bruen*,
 142 S. Ct. 2111 (2022) .............................. 7, 8, 13, 14, 15, 18, 19, 20, 27, 28, 37

*New York State Rifle & Pistol Assn., Inc. v. Bruen*,
 597 U.S. 1 (2022) ...................................... 2, 21, 22, 25, 28, 29, 30, 31, 32, 33, 38

*New York State Rifle & Pistol Ass'n v. Cuomo*,
 804 F.3d 242 (2d Cir. 2015) ...........................................................32

*Nunez v. Davis*,
 169 F.3d 1222 (9th Cir. 1999) ........................................................42

*Nunn v. State*,
 1 Ga. 243 (1846) ....................................................................8, 9, 24

*Oakland Tactical Supply, LLC v. Howell Township, Michigan*,
 No. 23-1179, 2024 WL 2795571 (6th Cir. May 31, 2024)..................34

*Parr v. Mun. Ct.*,
 3 Cal. 3d 861 (1971) .......................................................................51

*People v. Miller*,
312 Cal. Rptr. 3d (Cal. App. 3d Dist. 2023) ...................................................26

*Peruta v. Cnty. of San Diego*,
824 F.3d 919 (9th Cir. 2016) ....................................................................17, 25

*Peterson v. Martinez*,
707 F.3d 1197 (10th Cir. 2013) ...................................................................22

*Rinaldi v. Yeager*,
384 U.S. 305 (1966) ....................................................................................49

*Robertson v. Baldwin*,
165 U.S. 275 (1897) ....................................................................................22

*St. Joseph Abbey v. Castille*,
712 F.3d 215 (5th Cir. 2013) .......................................................................50

*Silveira v. Lockyer*,
312 F.3d 1052 (9th Cir. 2002) ........................................................11, 12, 47

*State v. Buzzard*,
4 Ark. 18 (1842) ........................................................................................24

*State v. Chandler*,
5 La. Ann. 489 (1850) ............................................................................9, 25

*State v. Mitchell*,
3 Blackf. 229 (Ind. 1833) ............................................................................23

*State v. Reid*,
1 Ala. 612 (1840) ..............................................................................9, 23, 24

*Thornton v. City of St. Helens*,
425 F.3d 1158 (9th Cir. 2005) .....................................................................40

*Trister v. Univ. of Miss.*,
420 F.2d 499 (5th Cir. 1969) .......................................................................51

*United States v. Alaniz,*
  69 F.4th 1124 (9th Cir. 2023) ..................................................29, 30, 31

*U.S. v. Duarte,*
  101 F.4th 657 (9th Cir. 2024) ...........................................................15

*United States v. Henry,*
  688 F.3d 637 (9th Cir. 2012) .......................................................36, 37

*United States v. O'Brien,*
  391 U.S. 367 (1968) ..........................................................................44

*United States v. Pedregon,*
  520 F.App'x 605 (9th Cir. 2013) .......................................................31

*U.S. v. Perez-Garcia,*
  96 F.4th 1166 (9th Cir. 2024) ...................................................8, 15, 28

*United States v. Pinjuv,*
  218 F.3d 1125 (9th Cir. 2000) ...........................................................31

*United States v. Rahimi,*
  No. 22-915, 2024 WL 3074728 (U.S. June 21, 2024)...........21, 33, 34

*United States v. Stevens,*
  559 U.S. 460 (2010)...........................................................................28

*United States Dep't of Agric. v. Moreno,*
  413 U.S. 528 (1973)................................................................12, 48, 50

*United States v. Verdugo-Urquidez,*
  494 U.S. 259, 110 S. Ct. 1056, 108 L. Ed. 2d 222 (1990) ................14

*Ward v. Rock Against Racism,*
  491 U.S. 781 (1989)...........................................................................42

*Washington v. Glucksberg,*
  521 U.S. 702 (1997)...........................................................................45

*Worth v. Harrington*,
   2023 WL 2745673 (D. Minn. Mar. 31, 2023) .......................................18

*Wynn v. N.Y.C. Hous. Auth.*,
   2015 WL 4578684 (S.D.N.Y. July 29, 2015).........................................51

*Young v. Hawai'i*,
   992 F.3d 765 (9th Cir. 2021) ...........................................................2, 6

*Young v. Hawaii*,
   142 S. Ct. 2895 (2022)......................................................................2, 7

*Zablocki v. Redhail*,
   434 U.S. 374 (1978).....................................................................10, 46

**STATUTES AND REGULATIONS**

18 U.S.C. § 922(g)(8)............................................................................21

28 U.S.C. § 1291 ....................................................................................3

28 U.S.C. § 1331 ....................................................................................3

28 U.S.C. § 1343 ....................................................................................3

28 U.S.C. § 2201 ....................................................................................3

28 U.S.C. § 2202 ....................................................................................3

42 U.S.C. § 1983 ....................................................................................3

42 U.S.C. § 1988 ....................................................................................3

Act of Feb. 1, 1839, ch. 77, 1839 Ala. Acts .........................................22

Act of Apr. 1, 1881, ch. 96, § 1, 1881 Ark. Acts...................................22

Act of Feb. 1, 1881, 1881 Colo. Sess. Laws..........................................22

Act of Feb. 12, 1885, ch. 3620, 1885 Fla. Laws....................................22

Act of Apr. 16, 1881, 1881 Ill. Laws ...................................................22

Act of Jan. 14, 1820, ch. 23, 1820 Ind. Acts .......................................22

29 Ky. Gen.Stat. art. 29, § 1 (as amended through 1880) ......................22

Act of Mar. 25, 1813, 1813 La. Acts ....................................................22

1866 Md. Laws, ch. 375, § 1.................................................................22

Neb. Gen.Stat., ch. 58, ch. 5, § 25 (1873).............................................22

Act of Mar. 5, 1879, ch. 127, 1879 N.C. Sess. Laws .............................22

N.D. Pen.Code § 457 (1895)................................................................22

Act of Mar. 18, 1859, 1859 Ohio Laws ............................................22, 23

Act of Feb. 18, 1885, 1885 Or. Laws ...................................................23

Act of Dec. 24, 1880, no. 362, 1881 S.C. Acts......................................23

S.D. Terr. Pen.Code § 457 (1883) .......................................................23

Act of Apr. 12, 1871, ch. 34, 1871 Tex. Gen. Laws...............................23

Act of Oct. 20, 1870, ch. 349, 1870 Va. Acts........................................23

Wash.Code § 929 (1881) .....................................................................23

W. Va.Code, ch. 148, § 7 (1891) ..........................................................23

Cal. Pen. Code § 22210........................................................................31

Cal. Pen. Code § 25850.....................................................................4, 27

Cal. Pen. Code § 26045........................................................................17

Cal. Pen. Code § 26150..........................................................................4

Cal. Pen. Code § 26155.................................................................................4

Cal. Pen. Code § 26350.......................................................................3, 5, 26

Cal. Pen. Code § 26375.................................................................................4

Cal. Pen. Code § 26400.......................................................................3, 5, 26

Cal. Pen. Code § 26405(r)............................................................................4

## RULES

Fed. R. App. P. 4(a)(1)(A) ...........................................................................3

Fed. R. Civ. P. 56(a).............................................................................12, 13

## OTHER AUTHORITIES

Black's Law Dictionary (8th ed. 2004) ......................................................31

Black's Law Dictionary (9th ed. 2009) ......................................................36

Capt. Randolph Barnes Marcy, The Prairie Traveler (1859)....................38

Clayton E. Cramer, Concealed Weapon Laws of the Early Republic (1999) ........23

Saul Cornell & Nathan DeDino, *A Well Regulated Right: The Early American Origins of Gun Control*, 73 Fordham L.Rev. 487 (2004) ...................................22

English, William, 2021 National Firearms Survey (July 14, 2021). Georgetown McDonough School of Business Research Paper No. 3887145, Available at SSRN: https://ssrn.com/abstract=3887145 or http://dx.doi.org/10.2139/ssrn.3887145........................................................16, 34

English, William, 2021 National Firearms Survey: Updated Analysis Including Types of Firearms Owned (May 13, 2022). Georgetown McDonough School of Business Research Paper No. 4109494, Available at SSRN: https://ssrn.com/abstract=4109494 or http://dx.doi.org/10.2139/ssrn.4109494..37

*Fouts v Bonta* 24-1039 Doc. No. [7] (Defendant Bonta's Opening Brief) ............29

https://en.wikipedia.org/wiki/Rifle ........................................................35

https://en.wikipedia.org/wiki/Rifled_musket...........................................35

https://money.cnn.com/2010/03/04/news/companies/Starbucks_gun_policy/........16

https://www.cbsnews.com/news/gun-fans-cheer-starbucks-policy/......................16

https://www.csmonitor.com/USA/2010/0227/Guns-at-Starbucks-Pushing-the-right-
to-bear-arms-in-public ........................................................................17

https://www.nssf.org/wp-content/uploads/2020/11/IIR-2020-Firearms-Production-
v14.pdf ..............................................................................................34

https://www.ojp.gov/pdffiles/165476.pdf...............................................34

https://www.youtube.com/watch?v=aElZkvsh_6o....................................1

Kleck & Gertz, Armed Resistance to Crime, 86 J.Crim. L. & C. 150 (1995).........16

Lansford Warren Hastings, The Emigrant's Guide to Oregon and California
(1845)................................................................................................38

Mark W. Smith, *'Not all History is Created Equal': In the Post-Bruen World,
the Critical Period for Historical Analogues Is when the Second Amendment
Was Ratified in 1791, and not 1868*, SSRN, Oct. 1, 2022,
https://bit.ly/3CMSKjw.......................................................................18

Michel, C.D. and Moros, Konstadinos (2024) "Restrictions "Our Ancestors Would
Never Have Accepted": The Historical Case Against Assault Weapon Bans,"
Wyoming Law Review: Vol. 24: No. 1, Article 3. Available at:
https://scholarship.law.uwyo.edu/wlr/vol24/iss1/3 .............................9

U.S.S.G. §2D1.1(b)(1) ........................................................................29, 30

W. Hays Parks, "Joint Service Combat Shotgun Program. The Army Lawyer 17 (Oct 1997), available at http://lawofwar.org/Parks_Combat_Shotguns.htm ; also at https://tjaglcs.army.mil/DesktopModules/Bring2mind/SimpleDownloads/Download.aspx?tabid=34&mid=604&file=The+Army+Lawyer%5C1997%5C10+-+October+1997%5C1997-Oct-Parks-Joint+Service+Combat+Shotgun+Program.pdf ...................................................36

## INTRODUCTION

Michael Zeleny appeals from the district court's grant of summary judgment to the Defendant Rob Bonta, in his Official Capacity as the Attorney General for the State of California ("California") in his challenge to the State of California's ban on the open carry of firearms. Mr. Zeleny is a published author, editor, and translator, an internationally renowned blogger, accomplished scholar in logic, history, literature, law, and technology, and an independent performance artist and film-maker. 2 ER 123. He is also a firearms historian and author. *Id.* Zeleny holds a California Certificate of Eligibility to possess firearms, and a Type 08 Federal Firearms License, allowing him to import "curio and relic" handguns, among other things. *Id.* Zeleny collects rare, unique, and historically significant guns. *Id.*

Prior to 2012, it was legal for Californians to openly carry unloaded firearms. And it was legal to carry ammunition on one's person as long as it was not loaded in the firearm.[1] Prior to 2012, Mr. Zeleny lawfully carried firearms openly while engaged in protests. *Id.* He stopped doing so after being criminally targeted. 2 ER 123. Also in 2012, California banned the unloaded open carry of firearms. Mr. Zeleny wishes to resume carrying firearms for purposes of lawful self-defense while engaged in protests. 2 ER 125. These protests are against New Enterprise Associates

---

[1] An example of this is in this news video.
https://www.youtube.com/watch?v=aElZkvsh_6o

("NEA"), a venture capital fund in Menlo Park. 2 ER 123. The subject matter of these protests are the credible allegations of child rape made against Min Zhu who is the founder of WebEx Communications and the NEA's continued finance of him. 2 ER 123. As part of his protests, he plans to present a multimedia performance of images and animations, and to display rare firearms, posters, placards, and other materials. He intends to film his performance and the reaction of passersby as part of an Internet video production and documentary film. 2 ER 124.

At the time of the trial court's ruling, it was bound by this Court's prior precedent in *Young v. Hawai'i,* 992 F.3d 765, 813 (9th Cir. 2021) which held "that government regulation on open carry . . . fall[s] outside the Second Amendment's scope, and thus may be upheld without further analysis." Since then, *Young* was vacated by the U.S. Supreme Court. *See Young v. Hawaii*, 142 S. Ct. 2895 (2022). And the U.S. Supreme Court issued its landmark opinion in *New York State Rifle & Pistol Assn., Inc. v. Bruen*, 597 U.S. 1, 27 (2022). The trial court also ruled against Mr. Zeleny on an equal protection claim due to this precedent because it found carrying a firearm is not a fundamental right and that there was no expressive activity at issue. Both these rulings are clearly in error due to the Supreme Court's recent ruling in *Bruen*. This Court should rule in Mr. Zeleny's favor on all his claims.

## JURISDICTIONAL STATEMENT

The district court had jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343, 2201, 2202 and 42 U.S.C. § 1983 and § 1988. This Court has jurisdiction over this appeal under 28 U.S.C. § 1291.

The district court's final judgment was entered on May 2, 2022. *See* 1 ER 2. The Appellants timely filed a notice of appeal on June 1, 2022. *See* 3 ER 420; *See also* Fed. R. App. P. 4(a)(1)(A).

## STATEMENT OF THE ISSUES FOR REVIEW

1. Does California's restrictions on the unloaded open carry of firearms violate the Second Amendment as made applicable to California by the Fourteenth Amendment?

2. Does California's entertainment exemption to the open carry of firearms violate the Equal Protection Clause of the 14th Amendment.

## STATEMENT OF THE CASE

### I.     California Law Generally Prohibits the Unloaded Open Carry of Firearms

California Penal Code 26350 provides, in pertinent part: A person is guilty of openly carrying an unloaded handgun when that person carries upon his or her person an exposed and unloaded handgun. Cal. Pen. Code § 26400 has a similar prohibition for firearms other than handguns. California law allows for the issuance

of open carry permits to those living in counties which have less than 200,000 people. *See* California Penal Code sections 26150, 26155. However, this exemption does not apply to Mr. Zeleny because he is a resident of Los Angeles which has a population of more than 200,000. 2 ER 125. Loaded open carry is prohibited by California Penal Code section 25850. Thus, California law amounts to a complete ban on his right to openly carry a firearm. These laws amount to an unconstitutional infringement on Mr. Zeleny's Second Amendment rights. Mr. Zeleny has sworn that "I would carry firearms in non-sensitive public places" but for the laws at issue here. 2 ER 125. California's ban on unloaded open carry is challenged in this lawsuit. California does have an "entertainment exemption" to its Open Carry Ban which Mr. Zeleny also challenges.

Open carry is permitted "by an authorized participant in ... a motion picture, television or video production, or entertainment event, when the participant lawfully uses the [firearm] as part of that production or event." Cal. Pen. Code § 26375; Cal. Penal Code § 26405(r). The Penal Code does not define "authorized participant," "motion picture, television, or video production," or "entertainment event." It does not specify who does the authorizing. Neither does it mention any criteria for authorization. *See* Cal. Pen. Code §§ 26375, 26405(r).

Mr. Zeleny has sought an exemption pursuant to these statutes. 2 ER 124 On its face, the exemption applies to Zeleny using firearms as part of a multimedia

performance, which he intends to film and distribute as a movie on the Internet. However, he was denied a permit. 2 ER 124. This exemption violates equal protection because it implicates constitutionally protected activity and impermissibly treats Mr. Zeleny differently from others. Thus, these laws violate equal protection.

## II.    Procedural History

### A.    Plaintiffs' Constitutional Challenge to California's Open Carry Ban

Mr. Zeleny filed this lawsuit on December 28, 2017. 3 ER 425. He subsequently amended his complaint and the operative Complaint for Declaratory and Injunctive Relief was filed on August 30, 2019. 3 ER 434. In relevant part, the Amended Complaint asserted that California's ban on open carry is unconstitutional and sought an Order declaring California Penal Code §§ 26400 and 26350 unconstitutional. 3 ER 414. The Complaint also sought injunctive relief via an Order, preliminarily and permanently enjoining the Defendants from enforcing the offending statutes. 3 ER 415.

### B.    The District Court's Grant of Defendant's Motion for Summary Judgment and Entry of Judgment

On January 21, 2021, Mr. Zeleny filed his Motion for Partial Summary Judgment against California/its Attorney General. 3 ER 441. California filed its Motion for Summary Judgment on all claims on January 21, 2020. 3 ER 441. After briefing, on July 13, 2021, the district court issued an Order Granting in Part and

Denying Plaintiffs' Motion for Summary Judgement[2] and Defendant's Motion for Summary Judgment, 1 ER 4, and entered judgment. *See* 1 ER 3.

### 1.    Summary of the District Court's Order

The district court upheld California's on unloaded open carry because of what was at the time binding precedent from this Court.

> At the time of their filing, the instant motions contemplated Zeleny's blanket Second Amendment challenge to California's open carry ban. Since then, the Ninth Circuit has held "that government regulation on open carry . . . fall[s] outside the Second Amendment's scope, and thus may be upheld without further analysis." *Young v. Hawai'i,* 992 F.3d 765, 813 (9th Cir. 2021) (internal quotation marks and citation omitted). "[R]espectfully disagree[ing] with" this decision, Zeleny nevertheless recognizes that, before this Court, *Young* is "dispositive of [his] broad claim that California's Open Carry Ban violates the U.S. Constitution."

*See* 1 ER 11

The trial court's dismissal of Mr. Zeleny's Equal Protection claim flowed from its Second Amendment ruling and a First Amendment ruling Mr. Zeleny does not challenge on appeal. "[T]he "entertainment event" exemption does not "proceed along suspect lines . . . [or] infringe[] [a] fundamental constitutional right[][.]" 1 ER 15. "To the degree Zeleny's motion seeks judgment of his entitlement to relief under the Equal Protection Clause, it is denied." *Id.*

---

[2] In the trial court, Mr. Zeleny prevailed on some of his claim against a separate Defendant, Menlo Park, who is not a party to this appeal.

The district court entered final judgment in favor of Defendant-Appellee on May 2, 2022. *See* 1 ER 2.

## SUMMARY OF THE ARGUMENT

Mr. Zeleny wishes to openly carry firearms. The State of California bans the open carry of firearms. This ban violates the Second Amendment. The precedent which required the trial court to rule against Mr. Zeleny has now been vacated by the U.S. Supreme Court. *See Young v. Hawaii*, 142 S. Ct. 2895 (2022). The Supreme Court's decision in *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111 (2022) compelled this result.

To determine whether a state's restriction is constitutional, the Court in *Bruen* explained that "the standard for applying the Second Amendment is as follows: When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." 142 S. Ct. at 2129–30. It is the State's burden to "affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id*. at 2127; *see also id.* at 2150 ("[W]e are not obliged to sift the historical materials for evidence to sustain New York's statute. That is respondents' burden."). If the State fails to meet its burden, then the State's restrictions must be enjoined.

Plaintiff is an American who seeks to carry bearable arms. As in *Bruen*, these undisputed facts end the textual inquiry: "the plain text of the Second Amendment protects [Plaintiff's] proposed course of conduct—carrying handguns publicly for self-defense." 142 S. Ct. at 2134. Accordingly, under *Bruen*'s unambiguous directions, "the burden falls on [the State] to show that [the challenged ban] is consistent with this Nation's historical tradition of firearm regulation." *Id.* at 2135. The "central" consideration in this analysis is whether, when compared to a modern regulation, the historical precedent imposed a "comparable burden" on the right of armed self-defense and was "comparably justified." *U.S. v. Perez-Garcia*, 96 F.4th 1166, 1181 (9th Cir. 2024). California "must identify a historical analogue that curtails the right to peaceably carry handguns openly for self-defense to a comparable degree, with a comparable severity, and with a comparable blanket enforcement." *Baird v. Bonta*, 81 F.4th 1036, 1047 (9th Cir. 2023).

Here, there is no historical tradition of restricting the open carry of firearms. In fact, historically the concealed carry of firearms was restricted, and open carry was the typical manner by which Second Amendment rights were exercised. The Georgia Supreme Court's decision in *Nunn v. State,* 1 Ga. 243 (1846), lauded by *Heller,* 554 U.S. at 612, is illustrative. There, the court held a state statute "valid" in prohibiting concealed carry, but to the extent the law "contains a prohibition against bearing arms *openly*," the court explained, it "is in conflict with the

8

Constitution, and *void*." 1 Ga. 251. Numerous other cases relied upon by *Heller* followed the same approach. 554 U.S. at 613, 629 (*citing Andrews v. State*, 50 Tenn. 165, 187 (1871); *State v. Chandler*, 5 La. Ann. 489 (1850); *State v. Reid*, 1 Ala. 612 (1840)). As there is no historical tradition of restricting the open carry of firearms, California's restrictions violate the Second Amendment.[3]

Even if this Court finds that California's ban on the open carry of handguns is constitutional because California has a mechanism to concealed carry handguns, this Court should find California's ban on long gun carry is unconstitutional. There is no mechanism to carry long guns for self-defense, within California law, which is applicable to Mr. Zeleny. The Supreme Court has found that the government cannot completely ban the carry of a protected arm. Here, there can be no dispute that long guns are protected arms. They are bearable arms which are in common use all throughout the United States. Thus, their complete ban on carry violates the Second Amendment.

Similarly, California's entertainment exemption violates the Equal Protection Clause of the Fourteenth Amendment. The Penal Code exemptions for "authorized participants" in a movie, television show, theatrical production, or other

---

[3] *See generally* Michel, C.D. and Moros, Konstadinos (2024) "Restrictions "Our Ancestors Would Never Have Accepted": The Historical Case Against Assault Weapon Bans," Wyoming Law Review: Vol. 24: No. 1, Article 3. Available at: https://scholarship.law.uwyo.edu/wlr/vol24/iss1/3 (listing historical commentary which says concealed carry can be banned.)

"entertainment event," implicate the Second Amendment right to bear arms and the First Amendment right to expression. By establishing these exemptions, California law impermissibly and arbitrarily disadvantages one group of speakers and one group of weapons carriers over another.

Strict scrutiny applies when a legislative classification "impermissibly interferes with the exercise of a fundamental right or operates to the peculiar disadvantage of a suspect class." *Mass. Bd. of Retirement v. Murgia*, 427 U.S. 307 (1976). Such classifications are presumed unconstitutional and will survive strict scrutiny only when the government can show the law is narrowly tailored to a compelling governmental interest. *See Zablocki v. Redhail*, 434 U.S. 374, 388 (1978) ("[w]hen a statutory classification significantly interferes with the exercise of a fundamental right, it cannot be upheld unless it is supported by sufficiently important state interests and is closely tailored to effectuate only those interests").

The entertainment exceptions impermissibly distinguish between different forms of First Amendment speakers, drawing a line between those engaged in "entertainment" – *i.e.*, movies, TV shows, and theatrical performances – and in other forms of protected speech – *i.e.*, protests, firearm training courses, "open carry" demonstrations, or gun-rights advocacy. Neither the statute itself nor its legislative history gives any valid justification for this distinction between forms of constitutionally-protected speech. The Legislature gave no reasons for the

exemption, and it does not appear that it considered other forms of expressive conduct at all. To the extent that the exception is intended, as it appears, to help the lucrative entertainment industry, this type of distinction is constitutionally impermissible. *See Branzburg v. Hayes*, 408 U.S. 665, 704 (1972). It also implicates Mr. Zeleny's Second Amendment rights for all the reasons mentioned above. And strict scrutiny applies due his Second Amendment rights as well.

The exemptions violate equal protection by respecting the rights of big movie studios and production companies, while denying those same rights to individuals such as Mr. Zeleny. Regulations which serve to disadvantage certain groups, or advantage certain groups over others, are subject to struct scrutiny, *see Mass. Bd. of Retirement v. Murgia*, 427 U.S. 307 (1976), and would rarely, if ever, be constitutional. Here, the State cannot identify a compelling interest justifying this disparate treatment, nor that the exemptions are narrowly tailored.

Even under rational basis review the exemptions would be unconstitutional. This Court's decision in *Silveira v. Lockyer*, 312 F.3d 1052 (9th Cir. 2002), is controlling. In *Silveira*, the Court concluded that favoring retired peace officers over similarly-situated civilians violated the Equal Protection Clause: favoring retired peace officers hoping to enjoy greater access to firearms didn't make sense in the context of a statute (there, the Assault Weapons Control Act) whose overall aim was restricting access to firearms. *Silveira* establishes that an active peace officer's role

11

as a law enforcement agent provides a rational basis for distinguishing between a duly sworn and authorized peace officer and a private citizen for the purpose of the carrying of firearms in otherwise-proscribed areas such as school zones. Because retired officers are not authorized to engage in law enforcement activities any more than other private citizens, however, *Silveira* instructs that there is no rational reason to treat them differently than similarly-situated civilians by granting them a special exemption.

Similarly, there is no rational reason to give an exemption to movie executive but not to Mr. Zeleny. The only conceivable reason is due to the unpopularity of Mr. Zeleny's activities. The United States Supreme Court has long held that drawing classifications based on political unpopularity violates the Equal Protection Clause. "[I]f the constitutional conception of 'equal protection of the laws' means anything, it must at the very least mean that a bare congressional desire to harm a politically unpopular group cannot constitute a legitimate governmental interest." *United States Dep't of Agric. v. Moreno*, 413 U.S. 528, 534 (1973). Here, the exemptions similarly violate equal protection.

## ARGUMENT

### I.    Standard of Review

Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

Rule 56(a) mandates summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); *see also Broussard v. Univ. of Cal. at Berkeley*, 192 F.3d 1252, 1258 (9th Cir. 1999). *See* Fed. R. Civ. P. 56(a). This Court reviews de novo a district court's ruling on summary judgment. *Albino v. Baca*, 747 F.3d 1162, 1173 (9th Cir. 2014).

## II. California's Open Carry Ban Violates the Second Amendment

"[T]he Second Amendment guarantees a general right to public carry," meaning ordinary, law-abiding citizens may "'bear' arms in public for self-defense." *Bruen*, 142 S. Ct. at 2135. Accordingly, the "general right to public carry" cannot be restricted absent "*exceptional* circumstances." *Bruen*, 142 S. Ct. at 2156 (emphasis added). To determine whether a state's restriction is constitutional, the Court in *Bruen* explained that "the standard for applying the Second Amendment is as follows: When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." 142 S. Ct. at 2129–30. It is the State's burden to "affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id*. at 2127; *see also id.* at 2150 ("[W]e are not

obliged to sift the historical materials for evidence to sustain New York's statute. That is respondents' burden."). If the State fails to meet its burden, then the State's restrictions must be enjoined.

### A. Plaintiff's Conduct is Covered by the Second Amendment's Plain Text

If the plaintiff's proposed course of conduct falls within the Second Amendment's plain text, then "the Constitution presumptively protects that conduct." *Bruen*, 142 S. Ct. at 2126. The Supreme Court has defined all of the Second Amendment's key terms. "The people" means "all Americans"; "Arms" includes "all instruments that constitute bearable arms"; and, most relevant here, to bear simply means to "carry." *District of Columbia v. Heller*, 554 U.S. 570, 580–82, 584 (2008).

Here, Mr. Zeleny is one of the people. This cannot seriously be disputed. "*Heller* explained that the words 'the people' in the Second Amendment have been interpreted throughout the Constitution to 'unambiguously refer[] to all members of the political community, not an unspecified subset.' 554 U.S. at 580. Further, 'the people' 'refer[] to a class of persons who are part of a national community or who have otherwise developed sufficient connection with this country to be considered part of that community.'" *Id.* (citing *United States v. Verdugo-Urquidez*, 494 U.S. 259, 265, 110 S. Ct. 1056, 108 L. Ed. 2d 222 (1990)). In this Circuit, all citizens have Second Amendment rights including pretrial detainees and misdemeanants.

"Although Appellants are pretrial releasees, they remain members of the national community—that is, they fall within the plain meaning of "the people"—and they are therefore not without the ability to invoke their constitutional right." *U.S. v. Perez-Garcia*, 96 F.4th 1166, 1180 (9th Cir. 2024). "As to Fencl, specifically, we cannot conclude that his prior misdemeanor conviction or arrests should operate to categorically exclude him from the national community." *Id.* *See also U.S. v. Duarte*, 101 F.4th 657, 671 (9th Cir. 2024) ("Our own analysis of the Second Amendment's text and history also confirms that the original public meaning of "the people" in the Second Amendment included, at a minimum, all American citizens."). Mr. Zeleny is a U.S. Citizens and has no criminal record. Based on this Court's precedent he is part of the People who have Second Amendment rights.

Furthermore, Mr. Zeleny's proposed course of conduct is protected by the Second Amendment. That is because he wishes to bear protected arms just like the plaintiffs in *Bruen.* As this Court as held in applying *Bruen*, when a restriction implicates a litigant's ability to carry arms this satisfies the plain text inquiry. "[T]he challenged condition restricts Fencl's ability to bear or keep any firearm—even those he would lawfully store at home for self-defense—and therefore unquestionably implicates his Second Amendment rights. *U.S. v. Perez-Garcia*, 96 F.4th 1166, 1181 (9th Cir. 2024). Thus, California's ban on unloaded open carry implicates the plain text of the Second Amendment.

California may argue that Mr. Zeleny's claim does not implicate the Second Amendment because an unloaded firearm cannot be used for self-defense. However, as Judge Breyer found in *Heller*, "[b]ased on a 1993 survey, the authors of one study estimated that there were 2.2–to–2.5 million defensive uses of guns (mostly brandishing, about a quarter involving the actual firing of a gun) annually. *See* Kleck & Gertz, Armed Resistance to Crime, 86 J.Crim. L. & C. 150, 164 (1995); *see also* ILEETA Brief App. 1–6 (summarizing studies regarding defensive uses of guns)." *D.C. v. Heller*, 554 U.S. 570, 700–01 (2008).[4] Furthermore. Mr. Zeleny has the option of carrying ammunition on his person outside of his holster. And then load the ammunition in a self-defense situation. Mr. Zeleny in fact kept ammunition on or about his person during his protests.[5] That was a common practice prior to 2012 when the current unloaded open carry ban went into effect.[6] An example of this is shown in the photo below.

---

[4] In another survey found 81.9% of self-defense uses of a firearm did not involve firing a shot. *See* English, William, 2021 National Firearms Survey (July 14, 2021). Georgetown McDonough School of Business Research Paper No. 3887145, at page 9. Available at SSRN: https://ssrn.com/abstract=3887145 or http://dx.doi.org/10.2139/ssrn.3887145

[5] Mr. Zeleny stated during his deposition that during his protests he kept live ammunition so that he could defend himself. *See* 2 ER 153-154; 2 ER 156-157; 2 ER 164-165.

[6] *See* https://www.cbsnews.com/news/gun-fans-cheer-starbucks-policy/; *See also* https://money.cnn.com/2010/03/04/news/companies/Starbucks_gun_policy/.



And loading an unloaded firearm with ammunition would be legal under California law. The prohibition on carrying loaded firearms "does not apply to a person 'who reasonably believes that any person or the property of any person is in immediate, grave danger and that the carrying of the weapon is necessary for the preservation of that person or property.'" *Peruta v. Cnty. of San Diego*, 824 F.3d 919, 925 (9th Cir. 2016) (en banc) (quoting California Criminal Code § 26045). Thus, Mr. Zeleny would have several meaningful methods for self-defense if he could carry an unloaded firearm openly. Mr. Zeleny's challenge satisfies the plain text of the Second Amendment.

---

[7] Photo taken from https://www.csmonitor.com/USA/2010/0227/Guns-at-Starbucks-Pushing-the-right-to-bear-arms-in-public showing two men in San Ramon, California lawfully open carrying unloaded firearms and ammunition on January 9, 2010. (last visited 6/2/2024).

**B.  California Must Identity a Historical Analogue to Its Open Carry Ban.**

California "must identify a historical analogue that curtails the right to peaceably carry handguns openly for self-defense to a comparable degree, with a comparable severity, and with a comparable blanket enforcement." *Baird v. Bonta*, 81 F.4th 1036, 1047 (9th Cir. 2023). The relevant time period for the historical analogue must be the Founding, centering on 1791. *Bruen*, 142 S. Ct. at 2135–36; *see also* Mark W. Smith, *'Not all History is Created Equal': In the Post-Bruen World, the Critical Period for Historical Analogues Is when the Second Amendment Was Ratified in 1791, and not 1868*, SSRN, Oct. 1, 2022, https://bit.ly/3CMSKjw. That is because "'[c]onstitutional rights are enshrined with the scope they were understood to have when the people adopted them.'" *Bruen*, 142 S. Ct. at 2136, quoting *Heller*, 554 U.S. at 634–35. Although the Court in *Bruen* noted an academic debate surrounding whether courts should look to 1868 and Reconstruction (when the Fourteenth Amendment was adopted), the Court found no need to address the point as the result with respect to carry was the same. *Bruen*, 142 S. Ct. at 2138 ("[T]he public understanding of the right to keep and bear arms in both 1791 and 1868 was, *for all relevant purposes*, the same with respect to public carry." (emphasis added)). But there can be no doubt that the actual analysis of the Court is focused on l791. *See Worth v. Harrington,* 2023 WL 2745673 at *11 (D. Minn. Mar. 31, 2023) (noting the "rather clear signs that the Supreme Court favors 1791 as the

date for determining the historical snapshot of 'the people' whose understanding of the Second Amendment matters"). The Court noted that its past precedents had "assumed that the scope of the protection applicable to the Federal Government and States is pegged to the public understanding of the right when the Bill of Rights was adopted in 1791." *Bruen*, 142 S. Ct. at 2137. *Bruen*'s characterization of the Court's precedents as assuming that 1791 is the proper answer is an understatement. In *Espinoza v. Montana Department of Revenue*, 140 S. Ct. 2246 (2020), for example, the Court held that "more than *30*" provisions of state law enacted "in the second half of the 19th Century" could not "evince a tradition that should inform our understanding of the Free Exercise Clause" when those provisions lacked grounding in Founding Era practice. *Id*. at 2258–59 (emphasis added). And even if modern laws alone could demonstrate a broad tradition of a regulation, there must at least be a strong showing that such laws are common in the states, i.e., many more than six states. *See Kennedy v. Louisiana*, 554 U.S. 407, 423–26 (2008) (only six states permitting death penalty for child rapists shows national consensus against it).

The historical analogues the State points to must be "representative." Historical "outlier" requirements of a few jurisdictions or of territorial governments are to be disregarded. *Bruen*, 142 S. Ct. at 2133, 2153, 2147 n.22 & 2156. This means regulations from only a handful of states or those that cover only a small portion of the population are not enough to demonstrate that modern regulations are consistent

with the Second Amendment. *Id.* at 2155 (rejecting regulations applying to only 1% of the American population). *Bruen* also categorically rejected reliance on laws enacted in the Territories, including expressly "Arizona, Idaho, New Mexico, Oklahoma," holding that such laws "are most unlikely to reflect 'the origins and continuing significance of the Second Amendment' and we do not consider them 'instructive.'" *Bruen*, 142 S. Ct. at 2154 (quoting *Heller*, 554 U.S. at 614).

The historical analogues must be "relevantly similar," which is to say that they must burden ordinary, law-abiding citizens' right to carry for self-defense in a similar manner and for similar reasons. *Bruen*, 142 S. Ct. at 2132. *Bruen* held that the inquiry into whether an analogue is proper is controlled by two "metrics" of "how and why" any restriction was historically imposed during the Founding era. *Id.* at 2133. "[W]hether modern and historical regulations impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified are '*central*' considerations when engaging in an analogical inquiry." *Id.* (emphasis in original). "While California does not need to identify a "dead ringer" for its open-carry ban, *id.*, California cannot satisfy the requirement for a closely analogous historical regulation by reference to any general firearm regulation California might unearth". *Baird v. Bonta*, 81 F.4th 1036, 1046 (9th Cir. 2023). "California must provide analogues that are "distinctly similar," *id*. at 2131, to California's general open-carry ban in "how" and "why" they curtailed individuals' right to carry

firearms." *Id.* California will inevitably argue that is entitled to a leniency in its historical analysis because the Supreme Court noted that some cases "implicating unprecedented societal concerns or dramatic technological changes may require a more nuanced approach" *Bruen*, 597 U.S. at 2132. However, as shown below the open carry of firearms is not a new societal problem. Thus, any such argument should be disregarded.

The U.S. Supreme Court's recent opinion in *United States v. Rahimi* does not change this analysis. In upholding 18 U.S.C. §922(g)(8) the Supreme Court reiterated that "a court must ascertain whether the new law is 'relevantly similar' to law that our tradition is understood to permit." *United States v. Rahimi*, No. 22-915, 2024 WL 3074728, at *1 (U.S. June 21, 2024) (quoting *Bruen,* 597 U.S. 1, 142). And it also cautioned that "even when a law regulates arms-bearing for a permissible reason, though, it may not be compatible with the right if it does so to an extent beyond what was done at the founding." *Id* at *6. As shown below, the laws at issue here have no relevantly similar historical counterparts and are thus unconstitutional.

### C.    There is no Historical Tradition of Prohibiting Open Carry

There is no historical tradition of restricting the open carry of firearms. Historically, the concealed carry of firearms was restricted, and open carry was the

typical manner by which Second Amendment rights were exercised.[8] "[C]oncealed carry was prohibited for resident and non-resident alike for much of our history." *Peterson v. Martinez*, 707 F.3d 1197, 1216 (10th Cir. 2013).[9]

In *Robertson v. Baldwin,* 165 U.S. 275 (1897), the Supreme Court considered a Thirteenth Amendment challenge to a pair of statutes authorizing the detention of deserting seamen. *Id.* at 277, 280. In rejecting the challenge, the Court noted that many of the freedoms guaranteed by the Bill of Rights are subject to "certain well-recognized exceptions." *Id.* at 281. One of those noted is "the right of the people to keep and bear arms (article 2) is not infringed by laws prohibiting the carrying of concealed weapons." *Robertson v. Baldwin,* 165 U.S. 275, 281–82 (1897).

A host of 19th Century laws prohibited the concealed carry of firearms while preserving the right to open carry.[10] Court decisions upheld this interpretation of the

---

[8] *See* Clayton E. Cramer, Concealed Weapon Laws of the Early Republic 143-52 (1999).

[10] "Most states enacted laws banning the carrying of concealed weapons." *Kachalsky v. Cnty. of Westchester*, 701 F.3d 81, 95 (2d Cir. 2012), abrogated by New York State Rifle & Pistol Assn., Inc. v. Bruen, 597 U.S. 1 (2022). "*See* Act of Feb. 1, 1839, ch. 77, 1839 Ala. Acts at 67–68; Act of Apr. 1, 1881, ch. 96, § 1, 1881 Ark. Acts at 191; Act of Feb. 1, 1881, 1881 Colo. Sess. Laws at 74; Act of Feb. 12, 1885, ch. 3620, 1885 Fla. Laws at 61; Act of Apr. 16, 1881, 1881 Ill. Laws at 73–74; Act of Jan. 14, 1820, ch. 23, 1820 Ind. Acts at 39; 29 Ky. Gen.Stat. art. 29, § 1 (as amended through 1880); Act of Mar. 25, 1813, 1813 La. Acts at 172; 1866 Md. Laws, ch. 375, § 1; Neb. Gen.Stat., ch. 58, ch. 5, § 25 (1873); Act of Mar. 5, 1879, ch. 127, 1879 N.C. Sess. Laws at 231; N.D. Pen.Code § 457 (1895); Act of Mar. 18, 1859,

right to arms by consistently upholding restrictions on concealed carry. "[T]he majority of the 19th-century courts to consider the question held that prohibitions on carrying concealed weapons were lawful under the Second Amendment or state analogues." *D.C. v. Heller*, 554 U.S. 570, 626 (2008). The earliest of these cases, the Indiana Supreme Court's 1833 decision in *State v. Mitchell* found "IT was held in this case, that the statute of 1831, prohibiting all persons, except travelers, from wearing or carrying concealed weapons, is not unconstitutional." 3 Blackf. 229 (Ind. 1833). Later, Alabama's highest court ruled that a concealed weapons ban was constitutional, while a ban on open carry would not be in *State v. Reid*, 1 Ala. 612 (1840). According to the court, "it is only when carried openly, that [weapons] can be efficiently used for defence." *Id* at 619. Carrying concealed weapons did not fit within the state's constitutional allowance that a person could keep and bear arms "for the purposes of defending himself and the State". *Id.* Because, for purposes of self-protection in moments of immediate danger, the court found that "there can be no necessity for concealing the weapon." *Id* at 621. The court rejected an argument that open carry and concealed carry were functionally identical, and that it mattered

---

1859 Ohio Laws at 56; Act of Feb. 18, 1885, 1885 Or. Laws at 33; Act of Dec. 24, 1880, no. 362, 1881 S.C. Acts at 447; S.D. Terr. Pen.Code § 457 (1883); Act of Apr. 12, 1871, ch. 34, 1871 Tex. Gen. Laws at 25–27; Act of Oct. 20, 1870, ch. 349, 1870 Va. Acts at 510; Wash.Code § 929 (1881); W. Va.Code, ch. 148, § 7 (1891); *see also* Cornell & DeDino, *A Well Regulated Right,* 73 Fordham L.Rev. at 502–16." *Id*.

not which one was allowed and which was barred. *Id* at 618.

That same year, the Tennessee Supreme Court upheld the state's concealed weapons ban. *Aymette v. State, 21 Tenn*. (2 Hum.) 154 (1840). Finding that "the right to bear arms in defence of themselves is coupled with the right to bear them in defence of the State," and that arms used in defense of the state "must necessarily be borne openly," the court held that only the open carry of weapons could be protected by Tennessee's Second Amendment analogue. *Id* at 161. "*Aymette* held that the state constitutional guarantee of the right to "bear" arms did not prohibit the banning of concealed weapons." *Heller*, 554 U.S. at 613.

Similarly, the Georgia Supreme Court in *Nunn v. State*, 1 Ga. 243 (1846), lauded by *Heller*, 554 U.S. at 612 agreed with these cases. There, the Court expressly found that the open carry of firearms is the right protected by the Second Amendment. The court held a state statute "valid" in prohibiting concealed carry, but to the extent the law "contains a prohibition against bearing arms openly," the court explained, it "is in conflict with the Constitution, and void." 1 Ga. 251. The Arkansas Supreme Court came to a similar conclusion in upholding a concealed weapons restriction. "The act in question does not, in my judgment, detract anything from the power of the people to defend their free state and the established institutions of the country. It inhibits only the wearing of certain arms concealed." *State v. Buzzard*, 4 Ark. 18, 27 (1842).

Shortly thereafter, in *State v. Chandler*, the Louisiana Supreme agreed with this line of cases and ruled that the state could ban concealed carry. *State v. Chandler*, 5 La. Ann. 489 (1850). The court wrote:

> The act of the 25th of March, 1813, makes it a misdemeanor to be "found with a concealed weapon, such as a dirk, dagger, knife, pistol, or any other deadly weapon concealed in his bosom, coat, or any other place about him, that does not appear in full open view." This law became absolutely necessary to counteract a vicious state of society, growing out of the habit of carrying concealed weapons, and to prevent bloodshed and assassinations committed upon unsuspecting persons. It interfered with no man's right to carry arms (to use its words) "in full open view," which places men upon an equality. This is the right guaranteed by the Constitution of the United States, and which is calculated to incite men to a manly and noble defence of themselves, if necessary, and of their country, without any tendency to secret advantages and unmanly assassinations.

*Id.* at 489-90.

This line of cases was the basis for this Court's en banc decision in *Peruta v. Cnty. of San Diego*, 824 F.3d 919 (9th Cir. 2016). "We hold that the Second Amendment does not preserve or protect a right of a member of the general public to carry concealed firearms in public." *Peruta*, 824 F.3d at 924. Thus, this Circuit is already familiar with this historical tradition. Even after *Bruen*, the California courts have acknowledged that historically the right to arms was exercised by the open carry of firearms.

"*Bruen* did not suggest that where a state bans both concealed and open carry (or all carry), the concealed carry provisions are unconstitutional. Rather, *Bruen*

quoted a Georgia case explaining that to the extent a statute that prohibited concealed carry also prohibited open carry, it was the open carry provision that conflicted with the Constitution and was void." *People v. Miller*, 312 Cal. Rptr. 3d 655, 663 (Cal. App. 3d Dist. 2023). History teaches us that open carry has always been allowed. There is no historical tradition of banning the open carry of firearms even if concealed carry is allowed. Pursuant to *Bruen*, California's ban on open carry violates the Second Amendment.

This Court should find Cal. Pen. Code § 26350 and Cal. Pen. Code § 26400 violate the Second Amendment because there is no historical tradition of banning the open carry of firearms even if concealed carry is allowed. However, even if this Court upholds Cal. Pen. Code § 26350 on the grounds that California has a mechanism for concealed carry, it should still find Cal. Pen. Code § 26400 is unconstitutional. That is because, as shown below, there is no mechanism for Mr. Zeleny to carry a long gun under California law.

### D. Cal. Pen. Code § 26400 Violates the Second Amendment Even if Cal. Pen. Code § 26350 is Found Constitutional

Even if this Court finds that California's ban on the open carry of handguns is constitutional because there is a mechanism to concealed carry a handgun, this Court should find California's ban on the open carry of long arms unconstitutional. Cal. Pen. Code § 26400 is also challenged in this lawsuit. It prohibits the unloaded open carry of firearms other than handguns and there is no way to carry a long arm

in a concealed manner under California law or as a practical matter. Cal. Pen. Code § 25850 prohibits the carry of all loaded firearms. And unlike handguns, there is no license exception within the law for long gun carry. This means California law operates as a complete ban on the carrying of long guns i.e. rifles and shotguns. As shown below, long guns are protected arms. Thus, California's complete ban on their carry is unconstitutional.

The Supreme Court has already supplied the definition of arms: "[w]eapons of offence, or armour of defence" or "any thing that a man wears for his defence, or takes into his hands, or useth in wrath to cast at or strike another." *Heller*, at 581. Accordingly, so long as something fits within that definition, the Constitution "presumptively guarantees" individuals the right to keep and bear it. *Bruen at* 2135. Indeed, that is what it means to say that "the Second Amendment extends, prima facie, to all instruments that constitute bearable arms." *Bruen*, at 2132 (quoting *Heller*, 554 U.S. at 582); *accord Caetano v. Massachusetts*, 577 U.S. 411, 411 (2016) (per curiam); *and Baird v. Bonta*, 2023 U.S. App. LEXIS 23760, at *13 (9th Cir. Sep. 7, 2023) ("… if the Second Amendment's plain text covers the regulated conduct, the regulation will stand only if the government can 'affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms' in the United States."). To be sure, that is just a presumption, which the government can rebut by showing that a prohibition

on keeping and/or bearing a particular type of arm "is consistent with this Nation's historical tradition of firearm regulation." *Bruen* at 2119. But if the government succeeds in doing so, that does not make the instrument any less of an "arm"; it just means it is the type of arm may be prohibited consistent with this Nation's historical tradition. This Circuit has endorsed that position. *U.S. v. Perez-Garcia*, 96 F.4th 1166, 1180–81 (9th Cir. 2024). ("[T]he presumptive protections of the Second Amendment may be rebutted as to arms not 'in common use' today for self-defense.'")

None of that is particularly novel. Just as the plain text of the Second does not distinguish among different types of "Arms," the plain text of the First Amendment does not distinguish among different types of "speech." *See Bruen*, at 24-25 (drawing this analogy). That is why, in the speech context, "the government must generally point to *historical* evidence about the reach of the First Amendment's protections" "to carry [its] burden" to show that "expressive conduct falls outside of the category of *protected* speech." *Bruen*, at 2130 (emphasis added); *see id.* (noting that *United States v. Stevens*, 559 U.S. 460 (2010), "plac[ed] the burden on the government to show that a type of speech belongs to a 'historic and traditional categor[y]' of constitutionally unprotected speech"). *See also Brown v. Entm't Merchs. Ass'n,* 564 U.S. 786, 789 (2011). The government bears that burden precisely because speech that falls outside "the category of protected speech" is still

28

speech within the plain meaning of that term. By the same token, arms that fall outside the category of *protected* arms are still arms within the plain meaning of that term. Thus, if the government wants to prohibit a class of arms, it must meet its burden of proving that they belong to a historic and traditional category of *unprotected* arms. To be sure, whether arms are in common use for lawful purposes like self-defense matters to the *historical tradition* inquiry, which looks to "whether modern and historical regulations impose a comparable burden on the right of armed self-defense." *Bruen*, 597 U.S. at 2118. But considerations that find no purchase in the plain text are not part of the plain text inquiry. That is precisely why the Supreme Court has instructed *twice* that whether a class of arms is "in common use" (or instead is "highly unusual in society at large") is part of *the* "*historical tradition*" *inquiry*. *Bruen*, 597 U.S. at 2128 (quoting *Heller*, 554 U.S. at 627).

Mr. Zeleny acknowledges that California has used dicta in *United States v. Alaniz*, 69 F.4th 1124, 1128 (9th Cir. 2023) to dispute the above point in other litigation.[11] If California raises that point here, it should be disregarded. The issue in *Alaniz* was whether U.S.S.G. §2D1.1(b)(1), which requires "an enhancement of the Guidelines calculation if a defendant possessed a dangerous weapon at the time of a felony drug offense, is constitutional under the Second Amendment following [*Bruen*]." 69 F.4th at 1126. In answering that question, the Court "assume[d],

---

[11] *See e.g. Fouts v Bonta* 24-1039 Doc. No. [7] (Defendant Bonta's Opening Brief)

without deciding, that step one of the *Bruen* test"—i.e., whether "the Second Amendment's plain text covers an individual's conduct," *Bruen*, at 17—was "met." *Alaniz*, 69 F.4th at 1129. *Alaniz*, in other words, assumed that "lawfully possessing firearms" is conduct covered by the Second Amendment's plain text and is therefore presumptively protected. *Id.* The Court then moved to the historical tradition inquiry and held that §2D1.1(b)(1) "comports with a history and tradition of regulating the possession of firearms during the commission of felonies involving a risk of violence." *Id.*

None of that has anything to do with the matter before this Court which is whether California's ban on the carry of long arms is constitutional. Nor does anything about how *Alaniz* decide the question the question before this Court. To be sure, *Alaniz* contains one clause of dicta in one sentence of dicta that is in tension with Mr. Zeleny's position. *See* 69 F.4th at 1129 (emphasis added) ("In alignment with *Heller*, [*Bruen*] requires a textual analysis, determining whether the challenger is part of the people whom the Second Amendment protects, whether the weapon at issue is in common use today for self-defense, and whether the proposed course of conduct falls within the Second Amendment." (cleaned up)). But *Alaniz* did not *hold* otherwise. To the contrary, *Alaniz* explicitly "assume[d], *without deciding*, that step one of the *Bruen* test [was] met" there. 69 F.4th at 1129 (emphasis added).

*Alaniz*'s drive-by summation of its understanding of *Bruen*'s plain text inquiry is thus quintessential dicta—"discussions that are 'unnecessary to the Court's holdings.'" *United States v. Pedregon*, 520 F.App'x 605, 608 (9th Cir. 2013) (quoting *Local 144 Nursing Home Pension Fund v. Demisay*, 508 U.S. 581, 592 n.5 (1993)); *see also* Black's Law Dictionary 1102 (8th ed. 2004) ("A judicial comment made while delivering a judicial opinion, but one that is unnecessary to the decision in the case and therefore not precedential."). This Court is "not bound by dicta in decisions from our court or any other circuit." *United States v. Pinjuv*, 218 F.3d 1125, 1129 (9th Cir. 2000). For the reasons laid out above, this Court should find that all bearable arms fall within the plain text of the Second Amendment.

California therefore bears the burden to prove that California law which imposes an outright ban on possessing a class of arms, "is consistent with the Nation's historical tradition." *Id.* at 17. *Bruen* instructs how a state may make that showing in the specific context of laws like California Penal Code § 22210 that ban the possession of arms outright. The key question is whether the arms a state wants to ban are "in common use today" for lawful purposes like self-defense, or rather "'are highly unusual in society at large.'" *Id.* at 47 (quoting *Heller*, at 627). And as shown below, California cannot meet its burden because long guns i.e. rifles and shotguns are arms protected by the Second Amendment.

### E.    Long Guns Are Arms Protected by the Second Amendment

Longs guns are arms protected by the Second Amendment. Arms are anything "that a man wears for his defence, or takes into his hands, or useth in wrath to cast at or strike another." *Heller*, 554 U.S. at 581; *see also Bruen,* 597 U.S. at 2128 (confirming that "that general definition covers modern instruments that facilitate armed self-defense"). "*Heller* emphasizes that 'the Second Amendment extends, prima facie, to all instruments that constitute bearable arms.' *Heller*, 554 U.S. at 582. In other words, the Second Amendment identifies a presumption in favor of Second Amendment protection, which the State bears the initial burden of rebutting." *See New York State Rifle & Pistol Ass'n v. Cuomo*, 804 F.3d 242, 257 (2d Cir. 2015).

The Second Circuit went on to find at least some rifles protected by the Second Amendment.  "Though we assume without deciding that the bulk of the challenged legislation is entitled to Second Amendment protection, we decide as much with respect to Connecticut's prohibition of the Remington Tactical 7615, a non-semiautomatic pump-action rifle." *Id.* at 257 n. 157. And found pre-*Bruen* that a ban on this type of rifle was unconstitutional. "We hold that the specific prohibition on the non-semiautomatic Remington 7615 falls within the scope of Second Amendment protection and subsequently fails intermediate scrutiny." *Id.* at 269. The D.C. Appeals court has also found that long arms are protected arms. "All the

requirements as applied to long guns, also affect the Second Amendment right". *Heller v. District of Columbia*, 670 F.3d 1244, 1255 (2011). The Court in *Heller* observed that the handgun is "the quintessential self-defense weapon," 554 U.S. at 62. However, it also recognized "long guns" are a type of arm. *Heller*, 554 U.S. 570, 629. It then expressly listed rifles as a type of protected arm. "Quakers opposed the use of arms not just for militia service, but for any violent purpose whatsoever—so much so that Quaker frontiersmen were forbidden to use arms to defend their families, even though "[i]n such circumstances the temptation to seize a hunting rifle or knife in self-defense." *Heller*, 554 U.S. 570, 590. Nothing in *Bruen* disturbs these holdings. "Our holding decides nothing about who may lawfully possess a firearm or the requirements that must be met to buy a gun. Nor does it decide anything about the kinds of weapons that people may possess. Nor have we disturbed anything that we said in *Heller* or *McDonald v. Chicago*, 561 U.S. 742, 130 S. Ct. 3020, 177 L.Ed.2d 894 (2010), about restrictions that may be imposed on the possession or carrying of guns." *Bruen*, 597 U.S. 2111, 2132 (Alito, J., concurring). The *Rahimi* Court reaffirmed these holdings. "As we explained in *Heller,* for example, the reach of the Second Amendment is not limited only to those arms that were in existence at the founding. 554 U. S., at 582. Rather, it "extends, prima facie, to all instruments that constitute bearable arms, even those that were not [yet] in existence." *Ibid.* By that same logic, the Second Amendment permits more than just those regulations

identical to ones that could be found in 1791. Holding otherwise would be as mistaken as applying the protections of the right only to muskets and sabers." *United States v. Rahimi*, No. 22-915, 2024 WL 3074728, at *6 (U.S. June 21, 2024)

There can be no question that long guns are protected arms which are in common use for lawful purposes. According to the NSSF (the firearm manufacturer lobby) while using data from the ATF, between 1991 and 2018, 79,498,830 long guns were produced in the United States and sold either to civilians or law enforcement.[12] The Department of Justice estimates that there are 129 million[13] long guns legally owned by private civilians.[14][15] Even if California attempted to rebut the presumption long guns are protected arms, based on any metric this Court might use, long guns are in common use. *Oakland Tactical Supply, LLC v. Howell Township, Michigan*, No. 23-1179, 2024 WL 2795571, at *11 (6th Cir. May 31, 2024) (Kethledge, Dissenting) ("As an initial matter, all of them seek to train with weapons

---

[12] https://www.nssf.org/wp-content/uploads/2020/11/IIR-2020-Firearms-Production-v14.pdf

[13] (70 million rifles, 49 million shotguns and 8 million other long guns)

[14] https://www.ojp.gov/pdffiles/165476.pdf (Exhibit four of pdf).

[15] *See also* English, William, 2021 National Firearms Survey (July 14, 2021). Georgetown McDonough School of Business Research Paper No. 3887145, Available at SSRN: https://ssrn.com/abstract=3887145 or http://dx.doi.org/10.2139/ssrn.3887145 at Page 20. ("Overall, Americans own in excess of 415 million firearms, consisting of approximately 171 million handguns, 146 million rifles, and 98 million shotguns.") The same study shows Americans own AR-15 styled rifles for the following purposes: defense outside the home (34.6%), home defense (61.9%), competitive shooting sports (32.1%), recreational target shooting (66.0%), hunting (50.5%), and other (5.1%). *Id* at 33-34.

in common usage—namely pistols, shotguns, rifles, or some combination thereof.").

"[C]olonial laws provide no justification for laws restricting the public carry of weapons that are unquestionably in common use today. Since the founding of Jamestown in 1607, there were three major classes of long guns i.e. shoulder fired firearms. They were known by many names but can be listed generally as Musket, Fowler, and Rifle.[16] A musket is a smoothbore firearm primarily intended to be fired from the shoulder and contains a bayonet lug instead of a front sight.[17] A musket generally discharges a single projectile called a musket ball.[18] A rifle is a firearm with a rifled bore designed to be fired from the shoulder and shoot a single projectile.[19] A Fowler is a smoothbore firearm designed to be fired from the shoulder. A Fowler or fowling piece, however, usually discharges multiple projectiles called shot, and is the reason that modern day fowlers are called shotguns. Both the musket and the fowler can shoot both single and multiple projectiles. "The military history of the shotgun dates to the middle of the sixteenth century, when the blunderbuss was invented in Germany and the smoothbore Birding Piece or Long Fowler was developed in England. While the latter was developed for hunting, the former was a close-range, antipersonnel weapon from the outset. The dual use—for

---

[16] Within these classes are subgroups such as carbine and blunderbuss.
[17] https://en.wikipedia.org/wiki/Rifled_musket
[18] *Id.*
[19] https://en.wikipedia.org/wiki/Rifle

35

hunting and personal protection—and greater range of the Long Fowler caused it to survive and to flourish as the blunderbuss began to wane in the first quarter of the nineteenth century."[20] Long guns have existed since the Founding of our nation. And have always been commonly possessed by Americans.

Thus, California's only remaining could only be that long arms are "dangerous and unusual" weapons as the term has been used under this Circuit's precedent. In *United States v. Henry*, the Ninth Circuit held that:

> An object is "dangerous" when it is "likely to cause serious bodily harm." *Black's Law Dictionary* 451 (9th ed. 2009)… A machine gun is "unusual" because private possession of all new machine guns, as well as all existing machine guns that were not lawfully possessed before the enactment of § 922(o), has been unlawful since 1986. Outside of a few government-related uses, machine guns largely exist on the black market.

*United States v. Henry*, 688 F.3d 637, 640 (9th Cir. 2012).

---

[20] W. Hays Parks, "Joint Service Combat Shotgun Program. The Army Lawyer 17 (Oct 1997). Available at http://lawofwar.org/Parks_Combat_Shotguns.htm ; also at https://tjaglcs.army.mil/DesktopModules/Bring2mind/SimpleDownloads/Download.aspx?tabid=34&mid=604&file=The+Army+Lawyer%5C1997%5C10+-+October+1997%5C1997-Oct-Parks-Joint+Service+Combat+Shotgun+Program.pdf in .pdf form.

An arm being merely dangerous "cannot be used to identify arms that fall outside the Second Amendment." *Caetano v. Massachusetts*, 136 S. Ct. 1027, 1031 (2016) (Alito, J., concurring). "As the *per curiam* opinion recognizes, this is a conjunctive test: A weapon may not be banned unless it is *both* dangerous *and* unusual." *Id.* Thus, if it can be demonstrated that an arm is either usual or not dangerous it receives Second Amendment protection.

Long guns are typically owned for lawful purposes.[21] Long guns are widely owned in every state in the Union. Unlike the machine guns at issue in *Henry*, long guns are legal to own in the home in every state and the District of Columbia. The widespread legality and lawful typical use of long guns are sufficient to establish they are in common use. *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111, 2119-20 (2022). Furthermore, long guns are not any more dangerous than handguns. They certainly do not rise to the level of devastating power that machine guns do. As handguns were not found to be dangerous in *Heller*, long guns cannot be found here. Thus, they are neither dangerous or unusual arms. And an arm must be both to fall within this exception.

---

[21] *See* English, William, 2021 National Firearms Survey: Updated Analysis Including Types of Firearms Owned (May 13, 2022). Georgetown McDonough School of Business Research Paper No. 4109494, Available at SSRN: https://ssrn.com/abstract=4109494 or http://dx.doi.org/10.2139/ssrn.4109494 at pg. 10-11. (Showing that in 34.1% of self-defense incidents where are person used a firearm to defend themselves, they did so with either a rifle (13.1%) or a shotgun (21%).

The "historical tradition" in this country is one of "prohibit[ing] the carrying of '*dangerous and unusual* weapons.'" *Bruen*, at 21 (quoting *Heller*, at 627; emphasis added). If an arm is not "dangerous and unusual," then that tradition does not and cannot justify a prohibition on carrying it. Simply put, the historical tradition of bans on dangerous and unusual weapons is relevant if and only if the state meets its burden of proving that the weapons it has banned are dangerous and unusual. That California has failed to do. Thus, California's ban on carrying long guns is unconstitutional.

## F. California's Ban on Long Arm Carry Violates the Second Amendment

Pursuant to *Bruen*, California cannot completely ban the carry of protected arms for self-defense. "Apart from a few late-19th-century outlier jurisdictions, American governments simply have not broadly prohibited the public carry of commonly used firearms for personal defense." *Bruen* at 2121. Historically long gun carry was encouraged rather than prohibited. Pioneers provisioning for a journey west were advised to "be armed with a rifle and revolver, and … never, either in camp or out of it, lose sight of them." Capt. Randolph Barnes Marcy, The Prairie Traveler 41 (1859); *see also* Lansford Warren Hastings, The Emigrant's Guide to Oregon and California 143 (1845) (advising westward travelers to "equip themselves with a good gun" and "a holster of good pistols").

As a practical matter, there are many reasons why a person might prefer a long gun over handguns. He might simply be more proficient with a long gun, or the environment he is in makes a long gun more practical. Imagine the maintenance worker who needs to travel into the wilderness to make repairs. He would fear being attacked by wild dogs or boar. A rifle or shotgun is a much more practical choice for self-defense. The complete prohibition on carrying long guns for self-defense under California law violates the Second Amendment. It may be that California can regulate the carrying of long guns outside the home. However, California's complete ban on long gun carry is blatantly unconstitutional.

### G. The Entertainment Exemption Violates Equal Protection

Similarly, California's entertainment exemption violates the Equal Protection Clause of the Fourteenth Amendment. Here, California has expressly stated that the firearms entertainment exemption does not apply to Mr. Zeleny's proscribed conduct.

> To the extent that an individual like Mr. Zeleny seeks to demonstrate on a public street with an unloaded firearm in an unconfined area and/or for an indefinite period of time, the Attorney General views the open carrying of unloaded weapons on a public street, in an unconfined area fully visible to and accessible by anyone else, and not within what would reasonably be considered a defined, enclosed production area, to potentially be conduct outside the scope of the Firearms Entertainment Permit and the corresponding exception to the open carry laws, and potentially subject to enforcement by the law enforcement agency primarily responsible for enforcing the open carry laws in that area.

2 ER 58-59.

California believes Mr. Zeleny's proposed conduct is outside the scope of the exemption despite Mr. Zeleny's plans to film future events. 2 ER 124. The fact that the entertainment exemption does not apply to Mr. Zeleny's conduct but it applies to various forms of media violates equal protection. "The first step in equal protection analysis is to identify the state's classification of groups." *Arizona Dream Act Coalition v. Brewer*, 757 F.3d 1053, 1064 (9th Cir. 2014) (citation omitted). "The groups must be comprised of similarly situated persons so that the factor motivating the alleged discrimination can be identified." *Thornton v. City of St. Helens*, 425 F.3d 1158, 1167 (9th Cir. 2005). And "[t]he groups need not be similar in all respects, but they must be similar in those respects relevant to the [government's] policy." *Arizona Dream Act Coalition*, 757 F.3d at 1064.

Here, the group at issue are people like Mr. Zeleny who wish to carry firearms while they are part of protests that are being filmed. They are being treated differently than others who wish to film other entertainment events. The Penal Code exemptions for "authorized participants" in a movie, television show, theatrical production, or other "entertainment event," implicate the Second Amendment right to bear arms. By establishing these exemptions, California law impermissibly and arbitrarily disadvantages one group of speakers over another.

### 1. Mr. Zeleny's Equal Protection Claim Implicates both First Amendment and Second Amendment Conduct.

As established in the Second Amendment argument above, Mr. Zeleny's proposed course of action implicates the Second Amendment right to arms because he would like to carry protected arms for lawful self-defense. Additionally, his proposed course of action implicates the First Amendment. The trial court acknowledged this by applying intermediate scrutiny to his First Amendment claims. "The objects of California's open carry legislation (husbanding law enforcement resources and preventing needless armed conflict) are plainly important. As for tailoring, the exemption Zeleny targets is one of dozens, strongly suggesting whatever "incidental restriction on alleged First Amendment freedoms" the legislation might represent "is no greater than is essential to the furtherance of [those] interest[s]." 1 ER 15.

The entertainment exceptions impermissibly distinguish between different forms of First Amendment speakers, drawing a line between those engaged in "entertainment" – *i.e.*, movies, TV shows, and theatrical performances – and in other forms of protected speech – *i.e.*, protests, firearm training courses, "open carry" demonstrations, or gun-rights advocacy. Neither the statute itself nor its legislative history gives any valid justification for this distinction between forms of constitutionally-protected speech. The Legislature gave no reasons for the exemption, and it does not appear that it considered other forms of expressive

41

conduct at all. 2 ER 48-49. To the extent that the exception is intended, as it appears, to help the lucrative entertainment industry, this type of distinction is constitutionally impermissible. *See Branzburg v. Hayes*, 408 U.S. 665, 704 (1972).

The exemption violates the First Amendment by making a content-based distinction between the free speech rights of movie studios and production companies and other, core forms of First Amendment activity. Such a distinction is not permissible. *See Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989) (restrictions must be justified "without reference to the content of the regulated speech") (*quoting Clark v. Community for Creative Non-Violence*, 468 U.S. 288, 293 (1984)). As the famous phrase states, "liberty of the press is the right of the lonely pamphleteer who uses carbon paper or a mimeograph just as much as of the large metropolitan publisher who utilizes the latest photocomposition methods." *Branzburg v. Hayes*, 408 U.S. 665, 703 (1972). Here, Mr. Zeleny carried firearms for expressive purposes in addition to self-defense. "I plan to carry unloaded firearms in connection with a series of protests." 2 ER 123. As his firearm carry is directly related to his protests, it is expressive in nature. It is true that 'the First Amendment protects only conduct that "is intended to convey a 'particularized message' and the likelihood is great that the message would be so understood.'" *Knox v. Brnovich*, 907 F.3d 1167, 1181 (9th Cir. 2018) (Quoting *Nunez v. Davis*, 169 F.3d 1222, 1226 (9th Cir. 1999)).

In *Knox*, this Court evaluated whether the act of "collecting early ballots is expressive conduct." *Id.* "We conclude that she has not carried her burden of demonstrating that the conduct of collecting ballots would reasonably be understood by viewers as conveying any of these messages or conveying a symbolic message of any sort." *Id.* That is a far cry from Mr. Zeleny's conduct. Here, Mr. Zeleny "events were provocative by design, often featuring animated depictions of child molestation. Relevant here, they also came to include Zeleny's conspicuous carriage of unloaded military-grade firearms, as well as his donning of live ammunition belts and tactical combat fatigues, presumably to the alarm of passing motorists." 1 ER 5. Mr. Zeleny "plan[s] to present a live, multimedia performance using a large flat-screen monitor powered by a generator featuring animated depictions of child molestation relating to Min Zhu's child rape and NEA's financial backing and continued support of Min Zhu." 2 ER 124.

There can be no debate that a reasonable viewer would see these events as expressive conduct in order to condemn NEA. Mr. Zeleny's use of firearms during these events is akin to a costume one might wear to get a reaction during a political protest. The trial court erred in finding that the fact these protests are not directly related to firearms drains from the expressive value of Mr. Zeleny's use of firearms. A person dressed up as a British Red Coat to protest high government taxes might carry a firearm to complete his costume in order to convey the message that the

43

government is acting like England at the time of the Revolution. That his protest is not directly related to firearms would not drain the expressive value of his use of a firearm. A person protesting the conduct of either Ukraine or Russia might dress as a soldier armed with a firearm of one of the respective groups. That his protest is not directly related to firearms again would not drain his use of firearms of expressive value.

The trial court found that "[u]nder the test articulated by the Supreme Court in *United States v. O'Brien,* "when 'speech' and 'nonspeech' elements are combined in the same course of conduct, a sufficiently important governmental interest in regulating the nonspeech element can justify incidental limitations on First Amendment freedoms." 391 U.S. 367, 376 (1968)." 1 ER 14. It then ruled against Mr. Zeleny's free standing First Amendment claim by applying intermediate scrutiny. 1 ER 15. Even if the trial court is correct, strict scrutiny should still apply to the First Amendment component of Mr. Zeleny's equal protection claims.

The trial court erred in its application of equal protection to Mr. Zeleny's claims despite correctly finding First Amendment rights are implicated by Mr. Zeleny's conduct. It found Mr. Zeleny's equal protection claim did not "infringe[] [a] fundamental constitutional right[][.]" 1 ER 15. And then found "[r]ational basis is thus the appropriate standard" to review Mr. Zeleny's claim. 1 ER 15. The trial court erred in doing so especially in light of its finding that intermediate scrutiny

applies to Mr. Zeleny's First Amendment claim. Strict scrutiny applies when a legislative classification "impermissibly interferes with the exercise of a fundamental right." *Mass. Bd. of Retirement v. Murgia*, 427 U.S. 307 (1976).

All the 1st Amendment's protections implicate fundamental rights regardless of the level of scrutiny. The Supreme Court has said the Due Process Clause "provides heightened protection against government interference with certain fundamental rights and liberty interests" and then found this included "the specific freedoms protected by the Bill of Rights." *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997). And as the Supreme Court held in *Gitlow* "we may and do assume that freedom of speech and of the press—which are protected by the First Amendment from abridgment by Congress—are among the fundamental personal rights and 'liberties' protected by the due process clause of the Fourteenth Amendment from impairment by the States." *Gitlow v. People of State of New York*, 268 U.S. 652, 666 (1925). Thus, whenever the First Amendment is implicated, a fundamental right is at issue. Therefore, the trial court erred in finding that strict scrutiny did not apply to Mr. Zeleny's equal protection claim despite correctly finding that his challenge to the entertainment exemption does implicate First Amendment conduct. This Court should find that pursuant to both the First and Second Amendment, Mr. Zeleny's challenge implicates a fundamental right and thus, strict scrutiny should apply. Such classifications are presumed unconstitutional and will survive strict scrutiny only

when the government can show the law is narrowly tailored to a compelling governmental interest. *See Zablocki v. Redhail*, 434 U.S. 374, 388 (1978) ("[w]hen a statutory classification significantly interferes with the exercise of a fundamental right, it cannot be upheld unless it is supported by sufficiently important state interests and is closely tailored to effectuate only those interests").

The entertainment exceptions impermissibly distinguish between different groups of people who wish to bear arms, drawing a line between those who wish to bear arms while engaged in "entertainment" – *i.e.*, movies, TV shows, and theatrical performances – and people situated like Mr. Zeleny. Neither the statute itself nor its legislative history gives any valid justification for this distinction between forms of constitutionally protected speech. The Legislature gave no reasons for the exemption. To the extent that the exception is intended, as it appears, to help the lucrative entertainment industry, this type of distinction is constitutionally impermissible. *See Branzburg v. Hayes*, 408 U.S. 665, 704 (1972).

The exemptions violate equal protection by respecting the rights of big movie studios and production companies, while denying both First and Second Amendment rights to individuals such as Mr. Zeleny. Regulations which serve to disadvantage certain groups, or advantage certain groups over others, are subject to struct scrutiny, *see Mass. Bd. of Retirement v. Murgia*, 427 U.S. 307 (1976), and would rarely, if ever, be constitutional. Here, the State cannot identify a compelling interest

46

justifying this disparate treatment, nor that the exemptions are narrowly tailored. Thus, this Court should find that California's entertainment exemption violates the Equal Protection Clause of the 14th Amendment. However, even if this Court finds that Mr. Zeleny's challenge does not implicate either the First or Second Amendment, it should still find California's entertainment exemption violates equal protection because it cannot even survive rational basis review. Even under rational basis review the entertainment exemption is unconstitutional. This Court's decision in *Silveira v. Lockyer*, 312 F.3d 1052 (9th Cir. 2002), is controlling. In *Silveira*, the Court concluded that favoring retired peace officers over similarly-situated civilians violated the Equal Protection Clause: favoring retired peace officers hoping to enjoy greater access to firearms didn't make sense in the context of a statute (there, the Assault Weapons Control Act) whose overall aim was restricting access to firearms.

*Silveira* establishes that an active peace officer's role as a law enforcement agent provides a rational basis for distinguishing between a duly sworn and authorized peace officer and a private citizen for the purpose of the carrying of firearms in otherwise-proscribed areas such as school zones. Because retired officers are not authorized to engage in law enforcement activities any more than other private citizens, however, *Silveira* instructs that there is no rational reason to treat them differently than similarly situated civilians by granting them a special exemption. Similarly, there is no rational reason to give an exemption to movie

executives but not to Mr. Zeleny. The only conceivable reason is due to the political and/or economic unpopularity of Mr. Zeleny's activities.

The United States Supreme Court has long held that drawing classifications based on political unpopularity violates the Equal Protection Clause. "[I]f the constitutional conception of 'equal protection of the laws' means anything, it must at the very least mean that a bare congressional desire to harm a politically unpopular group cannot constitute a legitimate governmental interest." *United States Dep't of Agric. v. Moreno*, 413 U.S. 528, 534 (1973), and *Lawrence v. Texas*, 539 U.S. 558, 580 (2003) (O'Connor, J., concurring) ("some objectives, such as 'a bare . . . desire to harm a politically unpopular group,' are not legitimate state interests."). In *Moreno*, the Supreme Court decided that disqualifying members of unrelated households from receiving food stamps was wholly irrelevant to the ostensible purpose of preventing fraud. 413 U.S. at 536–38. That law failed rational basis scrutiny because the legislative history revealed that Congress' purpose in enacting the statutory classification was to prevent "hippies" living together from obtaining the same benefits offered to similarly-situated households. *Id.* at 534–35.

The Court explained that "if the constitutional conception of 'equal protection of the laws' means anything, it must at the very least mean that a bare congressional desire to harm a politically unpopular group cannot constitute a legitimate governmental interest." *Id*. Likewise, in *City of Cleburne v. Cleburne Living Ctr.*,

48

473 U.S. 432 (1985), the Supreme Court held that a city failed to show a rational basis for its requirement that homes for the mentally retarded obtain a special use permit. *Id.* The court struck down the law as unconstitutional because the city did not impose the same permitting requirements on other buildings (such as apartment buildings and fraternity houses) that posed the same concerns the city claimed to be addressing with the special use requirement. *Id.* at 448–50. Put simply, the law violated Equal Protection because it "appear[ed] . . . to rest on an irrational prejudice against the mentally retarded." *Id.* at 450. Similarly, even where "economic rights are at stake, … the Equal Protection Clause []requir[es] that similarly situated persons … be treated equally." *Merrifield v. Lockyer*, 547 F.3d 978, 992 (9th Cir. 2008). The "distinctions … drawn" in legislation must be "applied with an even hand." *Rinaldi v. Yeager*, 384 U.S. 305, 309, 311 (1966); *see also In re Eric J.*, 25 Cal. 3d 522, 531 (1979) (citation omitted) ("The concept of the equal protection … recogni[zes] … that persons similarly situated with respect to the legitimate purpose of the law receive like treatment.")

In *Merrifield*, this Court held that a California economic-licensing scheme violated equal protection because its exemptions discriminated between two subsets of the pest-control industry. The "[g]eneral[]" assumption that creating exemptions is "a rational and quintessentially legislative decision" does not hold when "the government … undercut[s] its own rational basis for the licensing scheme by

excluding" "similarly situated" parties from the exemption's scope. 547 F.3d at 990–92. Such a scheme "fails to meet … rational basis review." *Id*. at 991; *see also St. Joseph Abbey v. Castille*, 712 F.3d 215, 226–27 (5th Cir. 2013) (law granting funeral homes an exclusive right to sell caskets was not rationally related to the legitimate purpose of protecting consumers where it "add[ed] nothing to protect consumers and put[] them at a greater risk of abuse including exploitative prices").Here, California's entertainment exemption similarly violates rational basis review. That is because California's entertainment exemption is there solely to benefit a politically popular and well-connected group i.e. the entertainment industry.[22]

The legislature's desire to "protect" favored groups' "expectations" or "respond to the demands of a political constituent" is not a cognizable state interest. *Fowler Packing Co., Inc. v. Lanier*, 844 F.3d 809, 815 (9th Cir. 2016) (reversing dismissal of an equal protection claim given arbitrary "carve out[s]" to select groups); *Metro. Life Ins. Co. v. Ward*, 470 U.S. 869, 878 (1985) (law unconstitutional where its "aim" was "to favor domestic industry within the State").

---

[22] *See Moreno*, 413 U.S. at 534–35 (invalidating law aimed at targeting disfavored group); *Del Monte Dunes at Monterey, Ltd. v. City of Monterey*, 920 F.2d 1496, 1509 (9th Cir. 1990) (reversing grant of summary judgment to the government on equal protection claim where plaintiffs "contend … [they] were singled out to bear the burden[s]" of the law; "[a]lthough the objective of [the law] is rational, it may not be rational to single out" plaintiffs consistent with the Constitution); *Christopher Lake Dev. Co. v. St. Louis County*, 35 F.3d 1269, 1274–75 (8th Cir. 1994) (similar).

There is no rational basis to give movie makers an exemption while at the same time not allowing individuals such as Mr. Zeleny the opportunity for an exemption. They are similarly situated "in all relevant respects" to other parties. *Ashaheed v. Currington*, 7 F.4th 1236, 1251 (10th Cir. 2021) (citation omitted).[23] Putting the reasons for his protests aside, Mr. Zeleny is filming his events and yet California law has a more "more onerous" burden on him. *Trister v. Univ. of Miss.*, 420 F.2d 499, 502 (5th Cir. 1969). This fails rational basis review.[24]

Even if this Court applies rational basis review, this Court should find that California's entertainment exemption violates equal protection. At a bare minimum, this Court should find the trial court erred in granting summary judgment to California because "whether two people are similarly situated is usually a question of fact for the jury." *Wynn v. N.Y.C. Hous. Auth.*, 2015 WL 4578684, at *5 (S.D.N.Y. July 29, 2015) (citation omitted).

---

[23] Reversing district court's dismissal of equal protection claim based on non-"meaningful" distinctions between groups because, under *Twombly*, a plaintiff's burden is to allege plausible facts showing that they are "similarly situated to others ... 'in all relevant respects'—not all respects".

[24] "A statutory classification which does not bear a rational relationship to the purpose which the statute is intended to serve" is unconstitutional. *Parr v. Mun.* Ct., 3 Cal. 3d 861, 864 (1971).

## III.   CONCLUSION

This Court should find that California's ban on the unloaded carry of firearms violates the Second Amendment, and that the entertainment exemption violates equal protection.

Respectfully submitted,

*s/ Alan Alexander Beck*

ALAN ALEXANDER BECK
Attorney at Law
2692 Harcourt Drive
San Diego, California 92123
Telephone: (619) 905-9105
Email: alan.alexander.beck@gmail.com

*Attorney for Appellant*

Dated: June 25, 2024.

## STATEMENT OF RELATED CASES

*Baird v. Bonta*, No. 24-565

The *Baird* appeal also challenges California's ban on the open carry of handguns. It challenges California Penal Code sections 25850 and 26350.

## <u>CERTIFICATE OF COMPLIANCE</u>

1.      This brief complies with the type-volume limitations of Fed. R. App. P. 32(f) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), it contains 12,659 words and complies with the word limit of Cir. R. 32-1.

2.       This brief complies with the typeface and type size requirements of Fed. R. App. P.32(a)(5) and (6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 365 in 14-point Times New Roman.

Dated: June 25, 2024.

*/s/ Alan Alexander Beck*
Alan Alexander Beck

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 25, 2024, I filed the foregoing Appellant's Opening Brief with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate ACMS system.

I certify that all participants in the case are registered ACMS users and that service will be accomplished by the appellate ACMS system.

*/s/ Alan Alexander Beck*
Alan Alexander Beck