# ORANGE COUNTY SHERIFF'S DEPARTMENT
# TRAINING BULLETIN

## 09 - 02

## OPEN CARRY MOVEMENT
## CITIZEN CARRYING FIREARM IN PLAIN VIEW

This contains useful information and pertinent Penal Code Sections for dealing with an individual who is carrying an unloaded firearm in public, i.e., in a belt holster.  The Open Carry movement might eventually makes its way to our areas of jurisdiction.  **As when dealing with any firearm, use good officer safety techniques and tactics and remember to treat all weapons as if they are loaded until proven otherwise.**

It has recently come to our attention from a variety of points around the State that officers are with increasing frequency encountering individuals carrying holstered pistols in plain view on a gun belt, but with ammunition close at hand either in bandolier fashion or a loaded magazine affixed to the gun belt.  It is believed that these individuals are attempting to provoke a law enforcement response in order to test whether responding officers will take inappropriate action in the face of ostensibly lawful exercise of the right to bear arms.

**BACKGROUND:** The Open Carry movement began in 2004 when the website, www.opencarry.org, was established. Recently, emails have been circulating about the Open Carry movement and its members' attempts to openly carry unloaded firearms in public places. The intent may be to have an officer arrest them or seize their firearm so they can file a civil lawsuit against the officer. Because of the recent incidents in the Sacramento RTTAC Region and the likelihood that the incidents will continue, the following information is being provided to law enforcement  agencies for purposes of Officer Safety and Situational Awareness.

**EXAMPLES:**  In July of 2008, the Sacramento Police Department received a phone call from an individual inquiring about carrying an unloaded handgun in public.  Additional information was received indicating that members of the group 'Open Carry' suggested going to a Sacramento restaurant wearing non-concealed pistols on their belts in an attempt to lure police into arresting them while other members of the group secretly videotaped the incident. The video could then be used in a civil lawsuit against the officer.

There was an incident in Turlock in early July of 2008 where officers responded to a citizen report of an armed person in a park on a Saturday afternoon. Upon arrival, officers encountered an adult male armed with a handgun carried in a belt holster. Employing customary officer safety practices, the person was disarmed at gun point and detained. The handgun was found to be unloaded and properly registered.

The male adult possessed valid identification and declared that he was engaging in his constitutional right to openly carry an unloaded firearm.  Because the firearm was unloaded and not concealed, no criminal violation occurred.  Once the person was properly identified and the weapon checked for registration status, the person was released.

 Sheriff-Coroner Sandra Hutchens

**ADDITIONAL INFORMATION:**  If you read the www.opencarry.org and www.californiaopencarry.com sites, the postings and blogs make it seem apparent that these law abiding 2nd Amendment advocates are exercising their right to legally Open Carry firearms.  From reading these sites, which include postings recording contacts with law enforcement while Open Carrying, the carriers have been well informed of the applicable state laws allowing their right to Open Carry and they appear to have been cooperative with law enforcement. There could be a potential problem in that law enforcement is rightfully trained to perceive a firearm displayed in public as an "armed subject" and a possible deadly threat.

It is important our personnel know this "Open Carry" movement is happening and they need to know the law as it pertains to the carrier's rights and law enforcement's limitations.  Educating our personnel will ensure the rights of the carrier are observed, prevent false arrests and minimize the potential of any over reaction when our personnel encounter an "Open Carry" situation. The knowledge can potentially defuse situations by more effectively communicating with the citizen engaged in Open Carry.

**APPLICABLE LAWS:**  All California law enforcement personnel should be aware of the following firearms laws in case they are confronted with a subject openly carrying a firearm.

- PC 12025 (f), unloaded firearms carried openly in belt holsters are **<u>not</u>** concealed within the meaning of section 12025.

- PC 12025 only applies to concealable firearms, which is defined in PC 12001 (a) as a pistol, revolver or firearm with a barrel less than 16 inches in length. <u>There is nothing  prohibiting someone from carrying an unloaded, concealed rifle or shotgun on their person or in their vehicle unless the barrel is less than 16 inches.</u>

- PC 12031 (g), A firearm shall be deemed to be loaded for the purposes of this section when there is an unexpended cartridge or shell in, or attached in any manner to, the firearm, including, but not limited to, in the firing chamber, magazine, or clip thereof attached to the firearm.
  **Case law now states the ammunition <u>must</u> be in a position from which it can be fired. *People vs. Clark* (1996) 45 Cal.App.4th 1147.

- PC 12031 (e), in order to determine whether or not a firearm is loaded for the purpose of enforcing this section, peace officers are authorized to examine any firearm carried by anyone on his or her person or in a vehicle while in any public place or on any public street in an incorporated city or prohibited area of an unincorporated territory. Refusal to allow a peace officer to inspect a firearm pursuant to this section constitutes probable cause for arrest for violation of this section.

- PC 626.9, Any person who possesses a firearm, <u>whether loaded or unloaded</u>, in or on the grounds of a public or private school for kindergarten to grade 12, **<u>or within 1000 feet of the school</u>**, without written permission of the proper school authority or on the grounds of a public or private university or college.

If this Open Carry movement expands, not all people wishing to exercise their Open Carry rights will be as well educated as those actively engaged in the open carry movement. As a society, we could end up with citizens who are not as well informed, make assumptions about the law, and for

2

personal reasons are more hostile to law enforcement encounters. There are many other scenarios that could occur at equally dangerous venues. A deputies knowledge of the law could be very useful in defusing the situation.

**EXAMPLE:**  An example would be where a person is Open Carrying legally and then out of ignorance of the law goes to pick up their child from school in violation of PC 626.9.  Someone at the school calls 9-1-1 and reports an armed subject on school grounds.  A deputy responds and encounters the Open Carry parent on campus who incorrectly claims their right to Open Carry anywhere and the parent becomes defiant because they believe they understand the law and the deputy is infringing upon their rights.  Because of a lack of knowledge of the law, the parent refuses to let the deputy inspect the gun to see whether or not it is loaded as required by PC 12031(e); even though mere possession of an unloaded gun of campus is a violation of  PC 626.9.

**PC 12031 BACKGROUND:**  The history of Penal Code 12031 is helpful in understanding this issue. Prior to 1967, it was lawful in California for an adult, not otherwise prohibited from  possessing a firearm, to carry a *loaded* firearm in plain view in public and in an incorporated city. Only the carrying of a concealed firearm was proscribed.  However, early in May of 1967, a group of Black Panthers marched into the California legislature fully armed. This action resulted in the Legislature enacting Penal Code 12031, effective July 28, 1967, thereafter proscribing the carrying of a *loaded* firearm in public, even if not concealed, illegal.

With that background in mind, it is noted that Penal Code 12031 provides in pertinent part that:

(a)(1) A person is guilty of carrying a ***loaded*** firearm when he or she carries a ***loaded***  firearm on his or her person or in a vehicle while in any public place or on any public street in an incorporated city or in any public place or on any public street in a prohibited area of unincorporated territory. (Emphasis added)

Subdivision (g) of 12031 provides that:

   A firearm shall be deemed to be loaded for the purposes of this section when there is an unexpended cartridge or shell, consisting of a case that holds a charge of powder and a bullet or shot, in, or ***attached in any manner to, the firearm***, including, but not limited to, in the firing chamber, magazine, or clip thereof ***attached to the firearm***; except that a muzzle-loader firearm shall be deemed to be loaded when it is capped or primed and has a powder charge and ball or shot in the barrel or cylinder. (Emphasis added)

While Penal Code 12025 addresses carrying a concealed firearm, subdivision (f) of that  statute expressly declares that "Firearms carried openly in belt holsters are not concealed within the meaning of this section." The firearm does not become "loaded" for purposes of a violation of 12031 if there is a loaded magazine or other carry of ammunition close at hand.

Here, the situation presented is of an adult person carrying an unloaded firearm in plain view in public.  While there is ammunition close at hand for said firearm, the ammunition is not attached to the firearm.  Even if the ammunition was, for instance, taped to the  firearm, it is questionable whether this would constitute "loading" of the firearm in light of the holding in People v. Clark, (1996) 45 Cal. App. 4th 1147, 1152, where the court of  appeal, dealing with the question of whether the defendant had committed the offense of possession of methamphetamine while armed with a loaded, operable firearm, held that:

Under the commonly understood meaning of the term "loaded," a firearm is "loaded" when a shell or cartridge has been placed into a position from which it can be fired; the shotgun is not "loaded" if the shell or cartridge is stored elsewhere and not yet placed in a firing position. The shells here were placed in a separate storage compartment of the shotgun and were not yet "loaded" as the term is commonly understood.

**CONFLICTS WITH LOCAL ORDINANCE:** Local ordinances are able to close this gap by, making it a violation of a city's municipal code to carry an unloaded and unconcealed firearm in public. In this regard, please note Article XI, §7 of the California Constitution, provides that:

A county or city may make and enforce within its limits all local, police, sanitary, and other ordinances and regulations not in conflict with general laws.

Peace Officers may rely upon 12031(e), which provides that:

In order to determine whether or not a firearm is loaded for the purpose of enforcing this section, peace officers are authorized to examine any firearm carried by anyone on his or her person or in a vehicle while in any public place or on any public street in an in corporated city or prohibited area of an unincorporated territory. Refusal to allow a peace officer to inspect a firearm pursuant to this section constitutes probable cause for arrest for violation of this section.

**OTHER FEDERAL AND STATE RESTRICTIONS:** California selectively prohibits possession of firearms. Prohibitions generally apply to drug addicts and those convicted of felonies and specified misdemeanors, or subject to probation orders or restraining orders that prohibit possession (PC 12021, 12021.1), and those with histories of making deadly threats or receiving mental treatment for dangerous proclivities (W&I 8100, 8103). Minors may not generally possess **concealable** firearms (PC 12101).

In addition, individuals generally may not possess firearms in certain places, such as public buildings (PC 171b), airport and passenger vessel terminal "sterile areas" (PC 171.5), or on the ground or **within 1000 feet** of a public or private school, or on a college campus or property (PC 626.9). Possession during specified crimes increases the punishment (Exs: PC 12021.5, 12022, 12022.3, 12022.5, 12023 and 12024).

Other restrictions are you cannot carry in a National Park (36 CFR 2.4 (a)) or in a State Park (CCR Title 14, Div 3, Chap 1, s 4313 (a)); however firearms may be possessed within temporary lodging or a vehicle when unloaded and "packed, cased, or stored in a manner that will prevent their ready use" and you cannot carry on U.S. Postal Service property (39 CFR 232.1 (l)).

It is generally unlawful to carry **concealed** on the person or in a vehicle a handgun or other firearm capable of being concealed on the person (whether it is loaded or not) (PC 12025). This section is not violated by carrying an unloaded firearm openly, in a belt holster (PC 12025 (f)).

It is also generally unlawful to carry a **loaded** firearm (whether concealed or not) in a **public place** in incorporated cities and in prohibited areas of unincorporated territory (PC 12031). Because "prohibited area" includes any place where it is unlawful to discharge a firearm, this includes all Public streets (PC 374c).

Peace officers are authorized to **inspect** any firearm carried in prohibited public areas to determine whether or not it is loaded; refusal to permit inspection is probable cause for arrest for violation of PC 12031 (PC 12031 (e)). If the serial number of the weapon comes into plain view during

inspection, it may be noted and run against data bases. *Arizona v. Hicks* (1987) 480 US 321, 324. The incidental detention of the armed individual justifies a demand for ID, allowing age verification and data-base check for information about any disqualification to possess firearms. *Hiibel v. Sixth Judicial District* (2004) 542 US 177, 187.

Per PC 12031 (g) (also for H&S 11370.1-possession of certain drugs while armed with a loaded firearm, and for PC 12035-criminal storage), a firearm is "loaded" if there is matching ammunition **in** or **attached to** the weapon in such a way that **it can be fired**. *People v. Clark* (1996) 45 Cal.App.4th 1147. **Under this definition, neither PC 12025 nor 12031 is violated merely because a person openly carrying an unloaded firearm in a belt holster has matching ammunition on him, or close at hand.** (Contrast:  PC 171c and 171d-"loaded" at the state capitol/offices and governor's mansion, and 12023-"loaded" with intent to commit a felony, all of which define "loaded" as being in possession of the firearm and matching ammunition; F&G 2006-"loaded" rifle or shotgun in a vehicle on public road,  requires chambered shell).

## HOW DOES THIS AFFECT OUR AGENCY?

Presentation of an individual walking down the street carrying a pistol in a holster raises  obvious tactical issues, as well as safety concerns for both officers and the public. Other than to note these safety and tactical issues, we would urge that officers be alerted of this issue, that there is a possibility that they may encounter this behavior, and that they should be prepared to appropriately respond.

Field personnel should be made aware of the current state of the law as set forth in this  Training Bulletin and cautioned that this is not behavior warranting arrest, but that they are legally entitled under 12031(e) to demand inspection of any such firearms in order to ascertain that the weapon is unloaded.  If the firearm is unloaded, it should be returned and the subject released to go about his/her lawful business. Of course, if the firearm is loaded – as defined above – then an arrest is appropriate.  Any refusal to allow inspection of the firearm constitutes cause for immediate arrest for a violation of 12031.

**BOTTOM LINE:  Police may stop a person who is openly carrying a firearm in a belt holster and may inspect to see if the firearm is loaded.  Prompt incidental checks on the person and the weapon <u>may provide probable cause for arrest</u>; however, the person may not be arrested for violating PC 12031 if ammunition is not <u>in nor attached to</u> the weapon so as to allow it to be fired, even though the person may have access to matching ammunition.**

The material in this Training Bulletin was obtained using the following sources:

Sacramento Regional Threat Assessment Center, which can be contacted at (888) 884-8383, (916) 808-8383 or sacrttac@sacsheriff.com; *Officer Safety/Situational Awareness-Open Carry Movement* Memo dated July 24, 2008.

Paul R. Coble, Esq., with the law firm of Jones & Mayer, who can be contacted at (714) 446-1400 or prc@jones-mayer.com; *Client Alert Memorandum-Citizen Carrying Firearm In Plain View* Vol. 23 No. 23 dated December 4, 2008.

Los Angeles County District Attorney's Office's *One Minute Brief*  No. 2008-22 dated December 23, 2008 <u>Topic</u>: Crimes by Devallis Rutledge who can be contacted at drutledge@da.lacounty.gov.

www.opencarry.org

www.californiaopencarry.com