No. 22-15870

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

———————————

MICHAEL ZELENY, AN INDIVIDUAL,
*Plaintiff-Appellant*,

v.

ROB BONTA, AN INDIVIDUAL, IN HIS OFFICIAL CAPACITY;
*Defendant-Appellee*.

and

CITY OF MENLO PARK, A MUNICIPAL CORPORATION; AND DAVE BERTINI,
IN HIS OFFICIAL CAPACITY,
*Defendants*.

———————————

**On Appeal from the United States District Court
for the Northern District of California**
No. 3:17-cv-07357 RS (NC)
The Honorable Richard G. Seeborg, Judge

———————————

## MOTION TO VACATE AND REMAND TO THE DISTRICT COURT

———————————

ROB BONTA
*Attorney General of California*
THOMAS S. PATTERSON
*Senior Assistant Attorney General*

R. MATTHEW WISE
JOHN D. ECHEVERRIA
*Supervising Deputy Attorneys General*
S. CLINTON WOODS
*Deputy Attorney General*

CALIFORNIA DEPARTMENT OF JUSTICE
455 Golden Gate Ave, Suite 11000
San Francisco, CA 94102-7004
(415) 510-3807
Clint.Woods@doj.ca.gov
*Attorneys for Defendant and Appellee*

July 26, 2024

# TABLE OF CONTENTS

**Page**

Introduction ........................................................................................1

Procedural History ..............................................................................3

Argument.............................................................................................8

    I.     The Court Should Vacate the Judgment and Remand the Case to the District Court to Apply *Bruen* in the First Instance.......................................................................................8

          A.    The Supreme Court's Decision in *Bruen*........................8

          B.    The Court Should Vacate and Remand So the District Court May Consider the Second Amendment Claim Under *Bruen'*s Standard ...............13

          C.    Plaintiff's Arguments Against Remand Are Not Persuasive .................................................................17

Conclusion.........................................................................................19

Certificate of Compliance ........................................................................20

# TABLE OF AUTHORITIES

**Page**

CASES

*Ali v. Gonzales*
421 F.3d 795 (9th Cir. 2005) ................................................................... 17

*District of Columbia v. Heller*
554 U.S. 570 (2008) .................................................................... 9, 10, 11

*Jackson v. City & Cnty. of San Francisco*
746 F.3d 953 (9th Cir. 2014) .................................................................. 9

*McDonald v. City of Chicago*
561 U.S. 742 (2010) ................................................................................. 9

*New York State Rifle & Pistol Ass'n v. Bruen*
597 U.S. 1 (2022) ....................................................................... *passim*

*United States v. Rahimi*
144 S. Ct. 1889 (2024) ................................................................. *passim*

*Young v. Hawai'i*
992 F.3d 765 (9th Cir. 2021) ........................................................ 5, 14

STATUTES

United States Code, Title 18
§ 922(g)(8)(C)(i) ............................................................... 11, 12, 13

California Penal Code
§ 26350 ............................................................................................. 4
§ 26400 ............................................................................................. 4

# TABLE OF AUTHORITIES
## (continued)

**Page**

**CONSTITUTIONAL PROVISIONS**

United States Constitution
    First Amendment ..............................................................................*passim*
    Second Amendment...........................................................................*passim*
    Fourteenth Amendment ...............................................................3, 4, 5

**COURT RULES**

Federal Rules of Appellate Procedure
    Rule 27(a)(3)(B) .....................................................................................17

**INTRODUCTION**

This appeal arises from a final judgment issued in May 2022 rejecting Plaintiff Michael Zeleny's First and Second Amendment challenges to California's restrictions on the open carry of firearms.  In light of significant developments that have arisen since then—including Plaintiff's recent revelation that he waives his appeal of the First Amendment claim and the Supreme Court's post-judgment issuance of *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022)—the Attorney General respectfully requests that the Court vacate the judgment and remand the case to the district court for proceedings consistent with applicable Supreme Court precedent.

In the district court proceedings, Plaintiff principally focused on his First Amendment challenge, arguing that the State's restrictions on open carriage violated his First Amendment right to protest outside of a venture capital firm in Menlo Park, California, where Plaintiff planned "to present a multimedia performance of images and animations, and to display rare firearms, posters, placards, and other materials."  2-ER-124.  As part of that protest, Plaintiff claimed a right to carry *unloaded* firearms openly in public, not for self-defense purposes, but so he could "film . . . the reaction of passersby as part of an Internet video production and documentary film."  *Id.*

1

The district court denied Plaintiff's First Amendment claim in a lengthy order. 1-ER-2–20. It also denied in two sentences Plaintiff's tag-along Second Amendment claim asserting a right to openly carry unloaded firearms for expressive purposes, citing then-binding Ninth Circuit precedent and holding "that government regulation on open carry . . . fall[s] outside the Second Amendment's scope, and thus may be upheld without further analysis." 1-ER-11 (citing *Young v. Hawai'i*, 992 F.3d 765, 813 (9th Cir. 2021) (en banc), *abrogated by Bruen*, 597 U.S. 1). The district court's judgment issued in May 2022; weeks later, the Supreme Court established a new text-and-history approach to Second Amendment claims in *Bruen*.

Approximately one month ago, Plaintiff filed his opening brief in this appeal. For the first time, Plaintiff indicated that he "does not challenge" the district court's First Amendment ruling—which had been the focus of litigation in the proceedings below. Appellant's Opening Brief (AOB) 6. It has thus only recently become clear that the primary issue before this Court is Plaintiff's Second Amendment claim—and with that development, it has likewise emerged that a remand is warranted because there is no First Amendment claim that Plaintiff continues to pursue on appeal. The district court never had the opportunity to apply the *Bruen* framework to Plaintiff's claim to a right under the Second Amendment to openly carry unloaded

2

handguns or long guns in public for "expressive purposes." 3-ER-412 (Complaint ¶ 228). Remanding the case would allow the parties to develop the historical record consistent with current Supreme Court guidance, in line with this Court's treatment of scores of Second Amendment appeals involving judgments issued pre-*Bruen*.[1]

## PROCEDURAL HISTORY

Plaintiff Mark Zeleny is an author, blogger, and provocateur. On December 27, 2017, he filed a complaint alleging that California's restrictions on open carriage violate the First and Second Amendments of the U.S. Constitution and the Equal Protection Clause. The core of the operative complaint is Plaintiff's First Amendment claim, asserting a right to protest a Menlo Park business on the median of a busy road by flashing animated pictures of alleged child molestation while carrying unloaded military grade weapons and wearing weapons belts and tactical combat fatigues. 1-ER-5; 3-ER-374–419 (Complaint). Plaintiff alleged that a former head of the business engaged in child molestation and that carrying these weapons and military gear would help to "amplify" his protest

---

[1] The parties have met and conferred about the Attorney General's request to vacate the district court's judgment and remand the case for further proceedings consistent with *Bruen*. Plaintiff opposes this request.

message.  *Id.*; *see also* 3-ER-375 (Complaint ¶ 4).  When the City of Menlo Park denied Plaintiff a permit, he sued both the City and the Attorney General, alleging a variety of claims aimed at allowing him to continue his ongoing "protest," and seeking to vindicate his First Amendment rights. *See, e.g.*, 3-ER-395–401.

While the Complaint does not include a Second Amendment claim directed against the Attorney General, Plaintiff alleged that California Penal Code Sections 26350 and 26400 are unconstitutional because they "prohibit Zeleny from exercising his right to carry firearms *in peaceful protest*."  3-ER-406 (Complaint ¶ 190) (emphasis added).  The Complaint asserts a Fourteenth Amendment claim against the Attorney General on behalf of Plaintiff and other California residents, seeking the opportunity to "exercise the constitutional right to publicly bear arms *in furtherance of their right to free speech*[.]"  3-ER-412 (Complaint ¶ 227) (emphasis added); *see also id.* (Complaint ¶ 228) (alleging that "Defendants have created a classification of persons, including Plaintiff, who are treated unequally through the denial of their First and Second Amendment rights to publicly bear arms for expressive purposes").  The Complaint does not, in any one of its hundreds of paragraphs, seek to vindicate a Second Amendment right to carry an

4

arm—whether a handgun or long gun—for the purpose of self-defense. *See* 3-ER-407–19.

During summary judgment briefing in the proceedings below, this Court decided *Young v. Hawaiʻi*, holding that government regulation of open carry falls outside the scope of the Second Amendment. 992 F.3d at 813, *abrogated by Bruen*, 597 U.S. 1. As the district court observed, Plaintiff acknowledged at that time that *Young* was "dispositive of [his] broad claim that California's Open Carry Ban violates the U.S. Constitution," 1-ER-11, and Plaintiff opted not to provide further argument on his Second Amendment claim.

The district court granted summary judgment to the Attorney General on all claims. As relevant here, the court held that the First Amendment did not protect a right to carry unloaded weapons, 1-ER-14–15, and that the entertainment exemption satisfied rational basis review under an Equal Protection Clause analysis, 1-ER-15–16.

This appeal followed. At the inception of the appeal, Plaintiff continued to assert his First Amendment claim. Dkt. 2 (mediation statement asserting a denial of First Amendment rights).

After Plaintiff filed his notice of appeal below, the Supreme Court announced a new framework for analyzing Second Amendment claims in

5

*Bruen*. In lieu of the interest-balancing test that this Court and most other federal courts of appeals had adopted for resolving those claims, *Bruen* held that courts must apply a standard "rooted in the Second Amendment's text, as informed by history." 597 U.S. at 19. The Court also provided important guidance about how that test should be applied. *See id.* at 26–31. And it recognized that this historical analysis "can be difficult" and requires courts to make "nuanced judgments about which evidence to consult and how to interpret it." *Id.* at 25.

On August 10, 2022, the appeal in this case was administratively stayed until December 16, 2022. Dkt. 5. That stay was extended four more times. *See* Dkt. 6 (extending stay to April 28, 2023); Dkt. 7 (extending stay to May 15, 2023); Dkt. 8 (extending stay to November 30, 2023); *and* Dkt. 9 (extending stay to December 11, 2023). The administrative stay was lifted on December 12, 2023. Dkt. 10.

After securing an initial streamlined extension to file the opening brief by March 2024, Plaintiff's former counsel, Mr. David Affeld, filed a motion to extend the time to file the opening brief and also filed a simultaneous motion to withdraw as counsel, citing an irreparable breakdown of the relationship with his former client. Dkt. 14–15. On March 25, 2024, both of Mr. Affeld's motions were granted, allowing Mr. Affeld to withdraw as

counsel and extending the deadline to file the opening brief to April 29, 2024. Dkt. 16. However, the Court noted that Mr. Damion Robinson was still counsel of record for Plaintiff. *Id*. On April 8, 2024, Mr. Robinson also filed a motion to withdraw as counsel. Dkt. 21. Plaintiff's current counsel substituted in on April 17, 2024, and filed another motion to extend the deadline to file the opening brief. Dkt. 23, 25.

On June 25, 2024, Plaintiff filed his opening brief on appeal. In that brief, Plaintiff for the first time indicated that he has waived appeal of the judgment denying his First Amendment claim. AOB 6. The opening brief instead focuses on a Second Amendment claim—and unlike in the proceedings below, Plaintiff now asserts a right to bear arms not only for expressive purposes but also for self-defense purposes. *Id*. at 1. Plaintiff also presents an equal protection argument, contending that the denial of a right to carry unloaded firearms publicly for expressive purposes violates equal protection because movie executives are authorized to carry unloaded firearms in public when filming movies.

On June 27, 2024, Plaintiff filed a motion to hear this case with *Baird v. Bonta*, C.A. No. 24-565, which the Attorney General opposed—in part because he intended to file the present motion to vacate the judgment below

and remand for further proceedings in the district court in light of *Bruen*.

Dkt. 32, 34.

## ARGUMENT

I. **THE COURT SHOULD VACATE THE JUDGMENT AND REMAND THE CASE TO THE DISTRICT COURT TO APPLY *BRUEN* IN THE FIRST INSTANCE**

### A. The Supreme Court's Decision in *Bruen*

In June 2022—weeks after the district court issued its judgment in this case—the Supreme Court decided *Bruen*, addressing the constitutionality of New York's requirement that individuals show "proper cause" as a condition of securing a license to carry a firearm in public. 597 U.S. at 12. Before turning to the merits, the Court announced a new methodology for analyzing Second Amendment claims. It recognized that lower courts had "coalesced around a 'two-step' framework for analyzing Second Amendment challenges that combines history with means-end scrutiny." *Id.* at 17. At the first step of that approach, the government could "justify its regulation by establishing that the challenged law regulates activity falling outside the scope of the Second Amendment right as originally understood." *Id.* at 18 (cleaned up). If that inquiry showed that the regulation did not burden conduct protected by the Second Amendment, lower courts would uphold the regulation without further analysis. *Id.* Otherwise, courts would proceed

8

to the second step, which asked "how close[ly] the law c[ame] to the core of the Second Amendment right and the severity of the law's burden on the right," applying intermediate scrutiny unless the law severely burdened the "'core' Second Amendment right" of self-defense in the home, in which case strict scrutiny applied. *Id.*; *see also Jackson v. City & Cnty. of San Francisco*, 746 F.3d 953, 960 (9th Cir. 2014) (same).

In *Bruen*, the Supreme Court jettisoned that approach. 597 U.S. at 17. The Court explained that its earlier decisions in *District of Columbia v. Heller*, 554 U.S. 570 (2008), and *McDonald v. City of Chicago*, 561 U.S. 742 (2010), "do not support applying means-end scrutiny in the Second Amendment context." 597 U.S. at 19. It then announced a new standard for analyzing Second Amendment claims that is "centered on constitutional text and history." *Id.* at 22–24. Under this text-and-history approach, "[w]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct," and "[t]he government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id.* at 24.

As a threshold matter, *Bruen* directs courts to assess whether the "Second Amendment's plain text covers an individual's conduct," *id.* at 17—*i.e.*, whether the regulation at issue prevents "the people" from

9

"keep[ing]" or "bear[ing]" "Arms" for lawful purposes. If so, the Constitution "presumptively protects that conduct." *Id.* The burden then shifts to the government to justify its regulation by showing that the law is "consistent with this Nation's historical tradition of firearm regulation." *Id*.

While the Court recognized that the historical analysis conducted at step-one of the pre-*Bruen* two-step inquiry was "broadly consistent with *Heller*," 597 U.S. at 19, it also provided guidance about how the post-*Bruen* historical analysis should proceed. In some cases, the Court explained, this historical inquiry will be "fairly straightforward," such as when a challenged law addresses a "general societal problem that has persisted since the 18th century." *Id.* at 26. But in others—particularly where the challenged law addresses "unprecedented societal concerns or dramatic technological changes"—the Court recognized that this historical analysis requires a "more nuanced approach." *Id.* at 27. And the Court further explained that governments are not required to identify a "historical *twin*," and need only identify a "well-established and representative historical *analogue*." *Id.* at 30 (emphasis original).

In evaluating whether a "historical regulation is a proper analogue" for a challenged modern regulation, *Bruen* directs courts to determine whether the two regulations are "'relevantly similar.'" *Id.*; *see also United States v.*

10

*Rahimi*, 144 S. Ct. 1889, 1898 (2024). The Court identified "two metrics" by which regulations must be "relevantly similar under the Second Amendment": "how and why the regulations burden a law-abiding citizen's right to armed self-defense." *Bruen*, 597 U.S. at 29. The Court explained that those dimensions are especially important because "individual self-defense is 'the *central component*' of the Second Amendment right." *Id.* (quoting *McDonald*, 561 U.S. at 767, and *Heller*, 554 U.S. at 599).[2] Thus, after *Bruen*, a regulation that restricts conduct protected by the plain text of the Second Amendment is constitutional if it "impose[s] a comparable burden on the right of armed self-defense" as its historical predecessors, and the modern and historical laws are "comparably justified." *Id.*

Last month, the Supreme Court issued its decision in *Rahimi*, providing additional guidance on how courts are to evaluate whether a law is historically justified under the *Bruen* framework. *See* 144 S. Ct. at 1889. *Rahimi* involved a challenge to 18 U.S.C. § 922(g)(8)(C)(i), a federal statute that prohibits possession of firearms by certain persons who are subject to domestic-violence restraining orders based on a judicial finding that the person poses a credible threat of physical harm to an intimate partner or

---

[2] *See also Heller*, 554 U.S. at 628 ("[T]he inherent right of self-defense has been central to the Second Amendment right.").

child.  *See* 144 S. Ct. at 1894.  The Supreme Court observed that "some courts have misunderstood the methodology of our recent Second Amendment cases," and noted that those "precedents were not meant to suggest a law trapped in amber."  *Id*. at 1897.  The Court explained that the history-and-tradition approach articulated in *Bruen* "involves considering whether the challenged regulation is consistent with the *principles* that underpin our regulatory tradition."  *Id.* (emphasis added).  To demonstrate consistency with those principles, the government need not identify "a 'dead ringer' or a 'historical twin.'"  *Id.*  Instead, the government need only show that "the new law is 'relevantly similar' to laws that our tradition is understood to permit."  *Id.*

In applying *Bruen*'s analytical framework to section 922(g)(8), the Court identified "two distinct legal regimes" relevant to its analysis:  surety laws and prohibitions on "going armed" in public.  *Id*. at 1899-1901.  It then distilled from those regimes the applicable Second Amendment principle.  "Taken together," the Court explained, those laws "confirm what common sense suggests:  When an individual poses a clear threat of physical violence to another, the threatening individual may be disarmed."  *Id*. at 1901.  The Court held that Section 922(g)(8) is "consistent with the *principles* that underpin our regulatory tradition."  *Id.* at 1887 (emphasis added).

The Court acknowledged that section 922(g)(8) is "by no means identical" to the surety and going armed laws in the historical record, but the Court recognized that "it does not need to be" because the statute "fits neatly within the tradition the surety and going armed laws represent." *Id.* Ultimately, the Court had "no trouble" concluding that section 922(g)(8) falls within this regulatory tradition, which "allows the Government to disarm individuals who present a credible threat to the physical safety of others." *Id.* at 1902.

**B. The Court Should Vacate and Remand So the District Court May Consider the Second Amendment Claim Under *Bruen*'s Standard**

Because the district court entered final judgment before *Bruen*, the district court has not yet had the opportunity to apply *Bruen*'s text-and-history standard for adjudicating Second Amendment claims. In the proceedings below, the parties focused on Plaintiff's assertion that he has a First Amendment right to carry unloaded firearms for expressive purposes in connection with his protest of a company director. *See* 1-ER-2–20; 3-ER-407–19. Plaintiff's recent abandonment of his First Amendment claim shifts the focus of this case by making Plaintiff's Second Amendment claim the primary issue on appeal. In light of that development, remand is warranted to allow the parties to develop a historical record consistent with *Bruen* and

13

to allow the district court to consider Plaintiff's claim under *Bruen*'s standard.

Plaintiff contends that sufficient historical analysis, including the discovery necessary to support historical arguments, was already conducted in the district court. Dkt. 35 at 4. That is not correct. There, the parties' arguments focused on the constitutionality of California's open-carry laws under the pre-*Bruen* standard. *Id*. at 16–18; D. Ct. Dkt. 163 at 10–19. The district court resolved the case under the previous framework, relying exclusively on this Court's now-abrogated opinion in *Young*. 1-ER-11 n.3. To the extent that any historical arguments were raised by the parties, they were made without the benefit of a developed record, including expert evidence assembled for the purpose of addressing "whether the challenged regulation is consistent with the principles that underpin our regulatory tradition." *Rahimi*, 144 S. Ct. at 1898. Neither party addressed, for example, whether the challenged statutes impose a "comparable burden on the right of armed self-defense" as any relevant historical analogues and are "comparably justified." *Bruen*, 597 U.S. at 29.

In considering these and other historical questions, the district court will be guided by "various evidentiary principles and default rules," including "the principle of party presentation." *Bruen*, 597 U.S. at 25 n.6.

14

And as *Bruen* recognizes, this analysis "can be difficult," and sometimes requires judges to "resolv[e] threshold questions" and "mak[e] nuanced judgments about which evidence to consult and how to interpret it." *Id.* at 25 (quoting *McDonald*, 561 U.S. at 803–804 (Scalia, J., concurring); *see also Bruen*, 597 U.S. at 31 ("[W]e acknowledge that 'applying constitutional principles to novel modern conditions can be difficult and leave close questions at the margins.'" (quoting *Heller v. District of Columbia*, 670 U.S. 1244, 1275 (D.C. Cir. 2011) (Kavanaugh, J., dissenting))). The district court should be given the opportunity to conduct this inquiry in the first instance.

Remand is particularly warranted considering the evolution of Plaintiff's Second Amendment claim in this case. In the proceedings below, he asserted a Second Amendment right to carry firearms for expressive purposes. *See* 3-ER-407–19. There has been no historical analysis guided by *Bruen* or its progeny of whether the Second Amendment guards any such right. Now, on appeal, Plaintiff maintains that Second Amendment right, along with a right to openly carry specific long arms for the purpose of self-defense. AOB 32–41. Because Plaintiff never presented the latter theory before the district court, there has been no development of evidence or argument on this new appellate claim.

In any event, vacating the district court's judgment and remanding for further proceedings in light of *Bruen* is consistent with this Court's approach to the majority of appeals involving Second Amendment claims that were pending when *Bruen* was decided. *See Rupp v. Bonta*, 9th Cir. No. 19-56004 (June 28, 2022) (9th Cir. Dkt. 71); *McDougall v. Cnty. of Ventura*, 9th Cir. No. 20-56220 (June 29, 2022) (en banc) (9th Cir. Dkt. 55); *Martinez v. Villanueva*, 9th Cir. No. 20-56233 (July 6, 2022) (9th Cir. Dkt. 75); *Miller v. Bonta*, No. 21-55608 (Aug. 1, 2022) (9th Cir. Dkt. 27); *Nichols v. Newsom*, No. 14-55873 (Sept. 12, 2022) (9th Cir. Dkt. 142), *reh'g denied* Dkt. 152 (Sept. 19, 2023), *cert. denied* 144 S. Ct. 569 (Jan. 8, 2024); *Fouts v. Bonta*, 9th Cir. No. 21-56039 (Sept. 22, 2022) (9th Cir. Dkt. 34).[3]

Vacatur and remand to allow the district court to apply *Bruen* in the first

---

[3] It is also consistent with the practice of sister courts. *See, e.g.*, *Oakland Tactical Supply, LLC v. Howell Twp.*, No. 21-1244, 2022 WL 3137711, at *2 (6th Cir. Aug. 5, 2022) (vacating district court judgment and remanding to decide whether the plaintiff's "proposed course of conduct is covered by the plain text of the Second Amendment" and, if so, whether the regulation is "consistent with the nation's historical tradition of firearm regulation"); *Sibley v. Watches*, No. 21-1986-cv, 2022 WL 2824268, at *1 (2d Cir. July 20, 2022) (vacating judgment and remanding to the district court to "consider in the first instance the impact, if any, of *Bruen*" on challenge to "good moral character" requirement for concealed carry licenses); *Taveras v. New York City*, No. 21-398, 2022 WL 2678719, at *1 (2d Cir. July 12, 2022) (vacating and remanding because "neither the district court nor the parties' briefs anticipated and addressed [*Bruen*'s] *new legal standard*" (emphasis added)).

instance would also accord with this Court's general approach to addressing intervening Supreme Court decisions. *See, e.g.*, *Ali v. Gonzales*, 421 F.3d 795, 796–797 (9th Cir. 2005) (three-judge panel order withdrawing its opinion in light of Supreme Court decision issued after panel decision).

### C. Plaintiff's Arguments Against Remand Are Not Persuasive

In his reply in support of his motion to hear this case with *Baird*, Plaintiff presented three primary arguments against remand: (1) the Attorney General waived any right to move to remand; (2) remand is barred under the doctrine of laches; and (3) this Court can decide whether California's statutes are constitutional in the first instance. None of these arguments are persuasive.

First, while it is true that the federal rules allow a party opposing a motion to ask for affirmative relief as part of its opposition, the rules do not *require* any party to do so. *See* Fed. R. App. P. 27(a)(3)(B) ("A response *may* include a motion for affirmative relief." (emphasis added)). Plaintiff asserts no authority that the motion to remand *must* have been raised in the Attorney General's opposition to Plaintiff's motion to hear the case with *Baird*, rather than through a separate stand-alone motion seeking the remand.

17

Second, Plaintiff cites no authority to support the argument that a request for remand is barred by the doctrine of laches. As Plaintiff notes, laches typically "is an equitable time limitation on a party's right to bring suit." Dkt. 35 at 5 (citing *Boone v. Mech. Specialties Co*., 609 F.2d 956, 958 (9th Cir. 1979) (noting that laches is an affirmative defense)). Here, the Attorney General is not bringing suit, but is instead seeking remand to appropriately develop the record. While the appeal was filed two years ago, it was re-opened only in December 2023 after having been administratively stayed since August 2022. *See* Dkt. 5–10. And it was only after Plaintiff filed his opening brief a few weeks ago that it became evident that Plaintiff had abandoned his First Amendment claim and asserted an (unpleaded) Second Amendment right to carry unloaded firearms for the purpose of self-defense. AOB 6. The doctrine of laches does not prevent the Attorney General from developing a historical record because Plaintiff's newly-retained counsel elected to assert a novel legal theory for the first time on appeal.

Third, Plaintiff argues that remand is not warranted because any historical development can be conducted at the appellate stage by reviewing legislative facts. Dkt. 35 at 3 (citing *Teter v. Lopez*, 76 F.4th 938, 946–47 (9th Cir. 2023), *reh'g en banc granted, opinion vacated*, 93 F.4th 1150 (9th

Cir. 2024)).  As Plaintiff acknowledges, the opinion he cites has been

vacated.  And in light of the evolution of Plaintiff's claim, remand would

allow the parties to crystallize the arguments that would properly be raised

on appeal before this Court and allow the district court to consider the claims

under *Bruen*'s standard in the first instance based on expert evidence

specific to Plaintiff's particular Second Amendment claim.

## CONCLUSION

The Court should vacate the district court's judgment and remand this

case for further proceedings in light of *Bruen*.[4]

Dated:  July 26, 2024                Respectfully submitted,

ROB BONTA
*Attorney General of California*
THOMAS S. PATTERSON
*Senior Assistant Attorney General*
R. MATTHEW WISE
JOHN D. ECHEVERRIA
*Supervising Deputy Attorneys General*

  *s/ S. Clinton Woods*
S. CLINTON WOODS
*Deputy Attorney General*
*Attorneys for Defendant and Appellee*

---

[4] If the Court denies the motion to remand, the Attorney General is
prepared to file an answering brief, arguing that Plaintiff's Second
Amendment arguments related to self-defense are forfeited and that the
Second Amendment does not protect the right to bear arms for "expressive
purposes."  The Attorney General also reserves all rights to revisit the issue
of remand with the merits panel.

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing Motion to Vacate and Remand to the District Court complies with the type-volume limitation of Ninth Circuit Rules 27-1 and 32-3 because it contains 3815 words. This document complies with the typeface and the type style requirements of Federal Rule of Appellate Procedure 27 because it has been prepared in a proportionally spaced typeface using 14-point font.

Dated: July 26, 2024                    *s/ S. Clinton Woods*

## CERTIFICATE OF SERVICE

I certify that on July 26, 2024, I electronically filed the foregoing document with the Clerk of the Court of the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system. I certify that all other participants in this case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated: July 26, 2024     _/s S. Clinton Woods_